LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
    The Village of Ossining Police Department
885 Third Avenue, 16th Floor
New York, NY  10022.4834
212.583.9600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DIEGO SANTIAGO,

        Plaintiff,

    -against-

THE VILLAGE OF OSSINING POLICE
DEPARTMENT,

        Defendant.

---

Index No. 06 CV 5422 (CLB) (GAY)

**DEFENDANT'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT**

---

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF FACTS .............................................................................. 4

ARGUMENT ............................................................................................... 6

I.   PLAINTIFF CANNOT DEMONSTRATE THAT THERE IS A TRIABLE ISSUE
     OF FACT REGARDING HIS FAILURE TO PROMOTE CLAIM ....................... 6

     A.   The Applicable Statutes of Limitation Bar Plaintiff's Claims Arising From
          Events Prior to July 5, 2002 .......................................................... 7

     B.   Plaintiff's Burden of Proof Under § 1981 and the NYSHRL ................. 8

     C.   The Plaintiff Cannot Make Out a *Prima Facie* Case of Failure to Promote
          Based on Race or National Origin .................................................. 9

     D.   Defendant Articulated Legitimate Business Reasons For Selecting Officers
          Other Than Plaintiff for Appointment to Detective .......................... 13

     E.   Plaintiff Cannot Demonstrate that Defendant's Decision Was a Pretext for
          Discrimination on the Basis of His Race or National Origin .............. 15

II.  PLAINTIFF CANNOT DEMONSTRATE THAT THERE IS A TRIABLE ISSUE
     OF FACT SUPPORTING HIS RETALIATION CLAIM ................................. 20

     A.   The Plaintiff Cannot Establish a *Prima Facie* Claim of Retaliation .......... 20

          1.   Plaintiff Did Not Engage in Protected Activity ........................ 20

          2.   Plaintiff's Retaliation Claim is Duplicative of his
               Discrimination Claims ..................................................... 23

          3.   There is No Evidence Connecting the October 28, 2003
               Article to an Adverse Action ............................................. 23

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ................................................................ 6

*Becket v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234 (S.D.N.Y. 1995) ..................................... 21

*Brown v. City of New York*, 869 F. Supp. 158 (S.D.N.Y. 1994) ................................................ 15

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. ___, 126 S.Ct. 2405 (2006) ............ 20, 24

*Byrnie v. Town of Cromwell Board of Ed.*, 243 F.3d 93 (2d Cir. 2001) ................................. 14, 19

*Byrnie v. Town of Cromwell Pub Schs.*, 73 F. Supp. 2d 204 (D.Conn. 1999) ............................ 14

*Cameron v. Cmty Aid for Retarded Children, Inc.*, 335 F.3d 60 (2d Cir. 2003) .............. 16, 17, 18

*Carlton v. Interfaith Medical Ctr.*, 612 F.Supp. 118 (E.D.N.Y. 1985) ........................................ 18

*Chamberlin v. Principi*, No. 06-1291-cv, 2007 U.S. App. LEXIS 21829
      (2d Cir. Sept. 12, 2007) ........................................................................................... 24

*Choudhury v. Polytechnic Inst.*, 735 F.2d 38 (2d Cir. 1984) .................................................. 8, 23

*Cramer v. Pyzowski*, No. 04 CV 1122, 2007 U.S. Dist. LEXIS 38375
      (E.D.N.Y. May 25, 2007) ............................................................................................. 7

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) ...................................................... 21, 22

*Evans v. New York Botanical Garden*, 253 F. Supp. 2d 650 (S.D.N.Y. 2003) ........................... 17

*Ferraro v. Kellwood Company*, 440 F.3d 96 (2d Cir. 2006) ...................................................... 9

*Fishbach v. D.C. Dep't of Corr.*, 86 F.3d 1180 (D.C. Cir. 1996) ............................................. 19

*Garcia v. New York City ACS*, No. 03 Civ. 05271, 2007 U.S. Dist. LEXIS 71273
      (S.D.N.Y. Sept. 27, 2007) ......................................................................................... 20

*Gajjar v. Union College*, No. 00-cv-0718, 2002 U.S. Dist. LEXIS 1475
      (N.D.N.Y. Jan. 24, 2002) .......................................................................................... 16

*Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996) ...................................................... 7

*Holt v. KMI-Continental, Inc.*, 95 F.3d 123 (2d Cir. 1996) ......................................... 14, 16, 17

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000) ................................................... 10

*Jones v. R.R. Donnelley & Sons*, 541 U.S. 369 (2004) ............................................................. 7

*Kessler v. Westchester Cty. Dept. of Social Svcs.*, 461 F.3d 199 (2d Cir. 2006) ...................... 24

*Koerner v. State of New York*, 62 N.Y.2d 442 (1984) .............................................................. 7

*Leon v. Murphy*, 988 F.2d 303 (2d Cir. 1993) ....................................................................... 7

*Lloyd v. WABC-TV*, 879 F. Supp. 394 (S.D.N.Y. 1995) ......................................................... 14

## TABLE OF AUTHORITIES (Cont'd.)

*Logan v. New York State Human Rights Appeal Bd.*, 448 N.Y.S.2d 259
(3d Dep't. 1982) ................................................................................. 15

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003) ........................ 10

*Mascola v. City University of New York*, 14 A.D.3d 409 (1st Dep't 2005) .......... 7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................. 9, 10, 14

*McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001) ..................... 20

*New York State Office of Mental Retardation and Development Disabilities v.
State Div. of Human Rights*, 563 N.Y.S.2d 286 (3d Dep't 1990) ............... 21

*Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89 (2d Cir. 1999) ................ 8

*Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575 (S.D.N.Y. 2007) ............... 16, 24

*Raczka v. Potter*, No. 04 CV 737S, 2007 U.S. Dist. LEXIS 27395
(W.D.N.Y. Mar. 30, 2007) ............................................................... 23

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000) ............. 9, 15

*Rosen v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 11111,
No. 92 Civ. 6330 (S.D.N.Y. 1995) ................................................... 18

*Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749 (2d Cir. 2004) .......... 23

*Schachner v. Beth Israel Medical Ctr.*, No. 96 Civ. 7811, 1998 U.S. Dist. LEXIS 11544
(S.D.N.Y. Jul. 28, 1998) ................................................................. 13

*Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs.*,
165 F.3d 1321 (10th Cir. 1999), *cert. denied*, 528 U.S. 815 (1999) ........... 19

*Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111 (2d Cir. 2007) .......... 15

*Viola v. Philips Med. Sys. of North America*, 42 F.3d 712 (2d Cir. 1994) ........ 6

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000),
*cert. denied*, 540 U.S. 811 (2003) ................................................... 7

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000) .......... 8

*Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125 (2d Cir.),
*cert. denied*, 145 L. Ed. 2d 310, 120 S. Ct. 398 (1999) ......................... 21

**Statutes**

28 U.S.C. § 1658 ........................................................................... 7

42 U.S.C. § 1981 ..................................................................... *passim*

42 U.S.C. § 1982 ........................................................................... 8

42 U.S.C. §2000e-3 .................................................................. 20, 22

## TABLE OF AUTHORITIES (Cont'd.)

42 U.S.C. § 2000e-3(a) ................................................................................................ 23

P.L. No. 102-166, §101(2) ............................................................................................. 8

New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYHRL") ............... *passim*

N.Y. Exec. Law § 297(9) ................................................................................................ 7

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII") ................. *passim*

**Rules**

C.P.L.R. § 214(2) ........................................................................................................... 7

Fed. R. Civ. P. 56(c) ...................................................................................................... 6

**Authorities**

Federal Register, October 30, 1997 ............................................................................... 10

## PRELIMINARY STATEMENT

Plaintiff, Diego Santiago ("Plaintiff" or "Officer Santiago"), a Police Officer employed by the Defendant Village of Ossining Police Department (the "Department"), brought this employment discrimination action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYHRL"), alleging that the Defendant discriminated against him on the basis of his race (Hispanic or Latino) and national origin (Puerto Rican), and retaliated against him for engaging in protected activity.[1]

The Complaint alleges that Plaintiff was not promoted by the Department to the position of Detective each year from 2001–2004[2] because of his race and national origin. Initially, all such claims are barred by the applicable statutes of limitations except for those appointments made in 2004. One of these 2004 appointments involved a non-competitive appointment of a Traffic Specialist to a uniformed Detective position with no change in his job duties, for which no applications were sought or received. It is essentially only the second, competitive appointment in 2004, received by Donald Farrell, which is at issue in this case. The crux of Plaintiff's argument that he has been discriminatorily denied a Detective appointment is his false contention that his national origin and ability to speak Spanish rendered him more qualified than the other candidates for appointment to the Detective Division, even though neither were criteria for the appointment. Plaintiff believes that promoting a Spanish-speaking, Hispanic or Latino officer to Detective would be an asset to the Department and the community,

---

[1] Although paragraph 8 of the Complaint mentions that it is also an action to remedy "racial discrimination" under "42 U.S.C.A. §1983, violation of the Civil Rights Act of 1964," this appears to be a typographical error that intended to refer to 42 U.S.C. § 1981. Nowhere in the Complaint does Plaintiff attempt to articulate a basis for a cause of action under § 1983.

[2] Plaintiff has never sought to amend the Complaint to include Detective appointments made subsequent to the commencement of this action.

but he speciously concludes that its failure to do so can only be explained by discriminatory animus. However, as explained below, Plaintiff cannot meet his burden of proof in proving employment discrimination, as he is unable to demonstrate that he was denied appointment to the Detective Division because of his race and national origin. No evidence on the record supports his claims. Based upon the record established in this action, Plaintiff will not be able to demonstrate that the failure to appoint him, instead of Officer Farrell, to the Detective Division arose under circumstances which give rise to an inference of race or national origin discrimination. Any inference of discrimination is obviated by the appointment by the same decision maker of a Hispanic or Latino Police Officer, Jose Ferrao, to the Detective Division in 2002, and the 2005 appointment of a Spanish-speaking Hispanic or Latino officer, George Byrne, to the higher rank of Sergeant. Moreover, Plaintiff will be unable to demonstrate that the legitimate business reasons articulated by the Department for Plaintiff not being selected for the Detective appointment—his failure to rank highest among several candidates in an evaluation process by Sergeants and Lieutenants, or to receive the recommendation of the Lieutenant heading the Detective Division, or the ultimate endorsement of the Chief of Police, based upon job related criteria—was a pretext for discrimination on the basis of Plaintiff's race and national origin.

Plaintiff can offer nothing more than his own conclusory, self-serving allegations in response to the Department's proffer of legitimate business reasons for the appointment of others to the Detective Division. In effect, Plaintiff asks the Court to step into the role of the Village Board of the Village of Ossining and reverse the staffing decisions of the Chief of Police, substituting his own criteria for those actually used by the Department in making Detective

appointments, rather than determining whether unlawful discrimination has taken place. This is not the role of the Court.

With respect to his retaliation claim, Plaintiff testified that when he applied for the Detective position, the Department retaliated against him for applying by failing to appoint him Detective. Plaintiff has not stated a claim for retaliation because he cannot demonstrate that he has engaged in protected activity, and his retaliation claim is based on the same action that constitutes his underlying discrimination claim. To the extent his retaliation claim is based on a community petition seeking his appointment to the Detective position and/or an article covering that petition posted in the Department, he cannot state a retaliation claim on the basis of that petition or article as he made clear that he had nothing to do with either, and therefore did not engage in protected activity. Moreover, there is no evidence supporting a finding that retaliation for the petition or article had anything to do with why he was not appointed Detective. Accordingly, the Department is entitled to complete summary judgment dismissing all of Plaintiff's claims.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to its Local Civil Rule 56.1 Statement of Undisputed Facts for a more detailed recitation of the facts summarized below.

Plaintiff is a Police Officer with the Department of Hispanic or Latino race and Puerto Rican national origin. (Plaintiff Dep. 25:5–7; Fuchs Decl. Exh. 4.)

On or about February 5, 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 2, Exh. 1.) In that charge, Plaintiff claimed that he was denied promotions to the Department's Detective Division on the basis of his race and national origin in 2001, 2002, 2003, and 2004. (*Id.*) However, no police officer was appointed to the Department's Detective Division in 2001 or 2003. (Burton Aff. ¶

7.) Police Officer John Girolamo was appointed in May 2000 to a Detective position within his position as a Youth Officer, with no change in duties. This was a non-competitive appointment for which no applications were solicited or received. (*Id.* at ¶ 8.) In August 2004, Police Officer Paul Stymiloski was promoted to a uniformed Detective position within his duties as a Traffic Specialist, with no change in his duties. (*Id.* at ¶ 9.) This was also a non-competitive appointment, separate and distinct from the plainclothes Detective appointments, for which no applications were solicited or received. The only plainclothes Detective appointments made by the Department within the several years prior to the filing of the Complaint were in June 2002 (Officer Jose Ferrao) and September 2004 (Officer Donald Farrell). (*Id.* at ¶ 6.)

On April 21, 2006, the EEOC issued a determination dismissing Plaintiff's charge, stating that the evidence obtained during its investigation did not establish that a violation of the law occurred, and issued Plaintiff a 90-day Notice of Right to Sue. (Fuchs Decl. at ¶ 3, Exh. 2.) On July 5, 2006, Plaintiff filed a Complaint with this Court, again alleging that he was discriminated against on the basis of race and national origin because he was not appointed to Detective, but asserting claims under 42 U.S.C. § 1981 and the NYSHRL, not Title VII. (Complaint ¶ 1.)[3]

The parties each served and responded to written discovery requests. (*Id.* at ¶ 5). On April 11, 2007, Plaintiff was deposed by counsel for the Department. (*Id.*) During his deposition, Plaintiff admitted that he did not possess the certifications that Detectives Girolamo and Stymiloski, who were appointed to uniformed, non-competitive Detective positions in 2000 and 2004, have. (Plaintiff Dep. 73:7–11; 76:17–79:18.) Although Plaintiff claimed that he was more qualified than the other officers that applied for the Detective appointments in 2002 and

---

[3] A copy of the Complaint is annexed to the Fuchs Declaration as Exhibit 3.

2004 because of his Spanish-speaking abilities, his seniority with the Department and his "knowledge of the streets" and the Hispanic or Latino community, and the respect he feels he receives from the community (*Id.* at 110:23–111:7), he was unable to identify the criteria used to evaluate applicants for the position (*Id.* at 83:14–22; 91:12–22), was unfamiliar with the duties of Detectives (*Id.* at 51:7–52:18), and he did not know what qualifications the other officers who applied for the position had. (*Id.* at 82:13–20: 90:17–23.) Plaintiff was also unable to articulate a cognizable basis for his retaliation claim, testifying that he thought he was retaliated against for applying for the Detective position. (*Id.* at 19:10–20; 65:19–66:20; 99:15–100:10.) When asked why he felt that he was denied a promotion on the basis of his Puerto Rican national origin, Plaintiff testified that "I don't see any other reason," based upon his alleged "past experience" and "knowledge of the streets." (*Id.* at 93:3–17.)

Plaintiff took no depositions in discovery in this matter. (Fuchs Decl. at ¶ 10, Exh. 6.)

## ARGUMENT

### I. PLAINTIFF CANNOT DEMONSTRATE THAT THERE IS A TRIABLE ISSUE OF FACT REGARDING HIS FAILURE TO PROMOTE CLAIM

A party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Viola v. Philips Med. Sys. of North America*, 42 F.3d 712, 716 (2d Cir. 1994); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must set forth specific facts showing that there is a genuine issue for

trial. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

The opposing party must provide admissible evidence and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996), *cited in Cramer v. Pyzowski*, No. 04 CV 1122, 2007 U.S. Dist. LEXIS 38375, *13 (E.D.N.Y. May 25, 2007). Summary judgment is appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

### A.    The Applicable Statutes of Limitations Bar Plaintiff's Claims Arising From Events Prior to July 5, 2002

Plaintiff's § 1981 claims arising prior to July 5, 2002—four years from the date of Plaintiff's Complaint—are barred pursuant to 28 U.S.C. § 1658, which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369 (2004).[4]  Additionally, Plaintiff's claims under the NYHRL concerning specific Detective appointments prior to July 5, 2003—three (3) years from the date of Plaintiff's Complaint—are barred by the NYHRL's three (3) year statute of limitations and, thus, are time barred.  N.Y. Exec. Law § 297(9); C.P.L.R. § 214(2).  *See also Koerner v. State of New York*, 62 N.Y.2d 442, 445–46 (1984); *Mascola v. City University of New York*, 14 A.D.3d 409, 409 (1st Dep't 2005).

_____

[4] 28 U.S.C. § 1658 applies to Plaintiff's claims because they arise under subsection (b) of 42 U.S.C. § 1981, which was added to § 1981 by the Civil Rights Act of 1991, *i.e.* an "Act of Congress enacted after" December 1, 1990.

These limitations periods are material to certain denials of Detective appointments of which Plaintiff complains in the Complaint. Specifically, he complains of being denied appointments in 2001 and 2002. (Complaint ¶ 11.) No Detective appointment was made in 2001. Officer Girolamo was appointed Detective as a Youth Officer in May 2000, and Officer Jose Ferrao was appointed Detective effective June 24, 2002. (Burton Aff. ¶ 8, Exh. C.) Both of these appointments occurred more than four years prior to the date the Complaint was filed. Any claims arising from Plaintiff not receiving these appointments are therefore time-barred. Thus, the only Detective appointments within the scope of Plaintiff's Complaint that are not time-barred are those of Officers Paul Stymiloski in August 2004 and Donald Farrell in September 2004.

### B.    Plaintiff's Burden of Proof Under § 1981 and the NYSHRL

Section 1981(a) provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .." In the Civil Rights Act of 1991, Congress amended § 1981 to clarify that its "make and enforce contracts" language includes the same employment decisions that are covered by Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. seq.*[5] Claims brought pursuant to § 1981 and the New York State Human Rights Law are analyzed under the same rubric as Title VII. *See, e.g.,* *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir. 2000) (citations omitted); *Choudhury v. Polytechnic Inst.,* 735 F.2d 38, 44 (2d Cir. 1984) (§ 1981); *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999) (NYHRL).

---

[5] P.L. No. 102-166, § 101(2) (adding subsection (b) to 42 U.S.C. § 1982).

Thus, a plaintiff asserting a claim under § 1981, like under Title VII, must first establish a *prima facie* case of discrimination under the framework set forth by the Supreme Court in *McDonnell Douglas Corp.*, 411 U.S. 792 (1973).

The plaintiff meets that burden by showing that (1) he was within a protected group, (2) he was qualified for and satisfactorily performed the functions of his position, (3) he suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination.  If that *prima facie* case is established, the burden of production, but not persuasion, shifts to the employer to set forth a legitimate non-discriminatory reason for the complained of action.  Once the employer has met its burden of articulating a legitimate, non-discriminatory reason for the employment action, the employee must then show evidence, such as the falsity of the employer's stated reason, demonstrating that the reason advanced is pretextual—*i.e.*, that it masks the employer's true discriminatory reason for its actions.  *Ferraro v. Kellwood Company*, 440 F.3d 96, 100 (2d Cir. 2006) (citing *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097 (2000)).

As explained below, the Plaintiff cannot make out a *prima facie* case of race or national origin discrimination.  Furthermore, even if he somehow is found to have done so, the Department has met its burden of articulating legitimate business reasons for not selecting Plaintiff for appointment, and Plaintiff can produce no evidence raising a question of fact as to whether those reasons were a pretext for discrimination.  Therefore, summary judgment should be granted to the Department.

### C.    The Plaintiff Cannot Make Out a *Prima Facie* Case of Failure to Promote Based on Race or National Origin

Plaintiff claims that defendant failed to promote him to the Detective Division because of his race and national origin.  In order to establish a *prima facie* case of failure to

promote based on race or national origin Plaintiff must show that: (1) he was within the protected groups, (2) he applied for the position for which he was qualified, (3) he was rejected for the position or subjected to an adverse employment action, and (4) the circumstances give rise to an inference that there was a discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).

As to the first and third prongs, the Department concedes that Plaintiff meets his burden as he is a Hispanic or Latino person[6] and he was not appointed to Detective in 2004. However, Plaintiff cannot fulfill the second prong of this analysis, *i.e.*, "that he applied for the position for which he was qualified," as to one of the appointments at issue.

With respect to the appointment of Officer Paul Stymiloski in August 2004, no applications were solicited for that appointment, because Officer Stymiloski, who had been performing the duties of Traffic Specialist prior to the appointment, was simply appointed to a uniformed Detective position to perform duties within the zone of his existing expertise and specialized training in traffic enforcement. (Burton Aff. ¶¶ 9–10; Plaintiff Dep. at 79:19–80:6; 80:21–81:6.) Plaintiff admits that he does not have the training that Stymiloski has, nor was he even aware of the many certifications that Stymiloski has in traffic enforcement that qualified him for this specific position. (Burton Aff. ¶¶ 9–10; Plaintiff Dep. at 76:17–79:18.) Although

---

[6] For the purpose of Plaintiff's national origin allegations, Defendant submits that there is no substantive difference between the terms "Hispanic" and "Latino," as both indicate minority persons whose ancestry is from Latin or South America. In fact, the 2000 U.S. Census Bureau compilation of Equal Employment Opportunity data revised the term "Hispanic" to "Hispanic or Latino" in accordance with the change in definitions instituted by the Office of Management and Budget in *Revisions to the Standard for the Classification of Federal Data on Race and Ethnicity* (Federal Register, October 30, 1997). Therein, the "Hispanic or Latino" category was defined as "a person of Cuban, Mexican, Puerto Rican, *South or Central American*, or other Spanish culture or origin, regardless of race." *Id.* at p. 17 (emphasis added). The inclusion of South Americans in the definition thus includes Brazilians (who are obviously South American) in this category.

- 10 -

Plaintiff alleges that he expressed an interest every time there was a vacancy for Detective (*Id.* at 72:10–14; 87:18–22), Detective Stymiloski's appointment did not involve a vacancy. He was appointed as a uniformed Detective in August 2004 with no change in his specialized duties as Traffic Specialist—a position separate and distinct from the plainclothes Detective appointments about which Plaintiff complains, and for which there was no selection process. (Burton Aff. at ¶ 10.) No other Department members were performing the duties Officer Stymiloski was already performing, and therefore no other Department members were either qualified or considered for this appointment. Plaintiff concedes that the selection procedure for Detective appointments was not used for this appointment. (Plaintiff Dep. at 70:12–23; 72:5–18). There is no evidence whatsoever on the record that Plaintiff was qualified for the Detective appointment Officer Stymiloski received in August 2004. Accordingly, he cannot state a *prima facie* case of discrimination as to this appointment.

Second, Plaintiff cannot meet the fourth prong of a *prima facie* case, because he cannot show that the failure to select him instead of the officers who were selected for appointment occurred under circumstances creating an inference of discrimination. Although Plaintiff applied for the plainclothes Detective position in 2004, the process that was used to evaluate and select applicants for the Detective Division on those occasions was based on a non-discriminatory procedure using legitimate job-related criteria. Based on those criteria, Plaintiff's superiors determined that he was not the most qualified candidate for the position among the several candidates who applied.

When there is a vacancy for an appointment of a police officer to the position of Detective, Chief Burton sends out an email advising the Department employees of the vacancy and solicits a resume and cover letter from the officers interested in the appointment. (Burton

Aff. ¶ 3, Exh. A)  For each applicant, the Sergeants and Lieutenants receive his or her resume and an evaluation form, which asks them to evaluate various job related performance and behavioral criteria. (*Id.* at ¶ 4).  These job related criteria include supervisory skills, community interaction, handling assignments, victim and prisoner interaction, processing arrests, report writing, comprehension of police procedures, knowledge of laws and ordinances, police ethics and integrity, comprehension and communication skills, reasoning ability, general attitude, problem recognition, judgment, innovativeness, adaptability, leadership skills, interpersonal skills, physical fitness, and attendance.  Ability to speak Spanish and seniority were not among the criteria evaluated.  (*Id.* at ¶ 4, Exh. B).

The Sergeants and Lieutenants submit their evaluations to Chief Burton.  Chief Burton uses the evaluations as input in his determination of which candidate will be appointed. In addition to these evaluations by the Sergeants and Lieutenants, and his own impressions of the candidates, Chief Burton also consults the Lieutenant in charge of the Detective unit, Detective Lieutenant William V. Sullivan.    After receiving Detective Lieutenant Sullivan's recommendation, Chief Burton appoints the strongest candidate to the Detective Division.  Using this non-discriminatory process, the Department chose two officers over Plaintiff and the several other candidates who applied for the appointment as the best qualified candidate for the plainclothes Detective position in 2002 and 2004. (*Id.* at ¶¶ 3–6, 11–12).

One of those officers who received a higher ranking and recommendation than Plaintiff is Jose Ferrao, a Hispanic or Latino officer who was appointed to the Detective Division by Chief Burton in June 2002. (*Id. at* ¶¶ 6, 11.)  Although Plaintiff's claim concerning this appointment is time-barred, it weighs against Plaintiff's allegation that the Department discriminated on the basis of race or national origin in its Detective appointments. If the

Department were discriminating against Hispanic or Latino officers, Detective Ferrao would not have been chosen in 2002.

Detective Ferrao is one of five Detectives employed by the Department. (*Id.* at ¶ 15.) Considering the more prestigious Sergeant position, one of nine Sergeants, George Byrne, is Hispanic or Latino. (*Id.* at ¶16.). Under these circumstances, no inference of discrimination can reasonably be drawn from the same decision maker not choosing to appoint Plaintiff to a Detective position over several other applicants. Any inference of discrimination is further defeated by the same decision maker previously appointing Hispanics or Latinos to the Detective position and to the higher ranking position of Sergeant. *See, e.g., Schachner v. Beth Israel Medical Ctr.*, No. 96 Civ. 7811, 1998 U.S. Dist. LEXIS 11544 (S.D.N.Y. Jul. 28, 1998) (finding no inference of discrimination where a person within plaintiff's same protected category was hired in plaintiff's stead).

Based on these undisputed facts, Plaintiff cannot establish a *prima facie* case of discrimination for failure to appoint him to the position of Detective on the basis of his race or national origin.

**D.     Defendant Articulated Legitimate Business Reasons For Selecting Officers Other Than Plaintiff for Appointment to Detective**

Even if Plaintiff could carry his burden of establishing a *prima facie* case of failure to promote based upon race or national origin, which he cannot, the Department can demonstrate a legitimate business reason for appointing other officers to the Detective Division instead of Plaintiff.

First, as discussed above, Officer Stymiloski was appointed to a uniformed Detective position within his unique, current job duties as a Traffic Specialist. No other Department member was qualified for this position. Stymiloski's appointment was a non-

competitive appointment that was not the result of a vacancy, and the Department did not solicit or entertain any applications from other officers. (Burton Aff. ¶¶ 9–10.) *See also Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (holding that plaintiff could not make out a *prima facie* case for discriminatory failure to promote her to a particular position when the defendant employer did not seek applicants to fill that position) (citing *McDonnell Douglas*, 411 U.S. at 802).

Second, as set forth above, when a vacancy for a plainclothes Detective position was filled, a non-discriminatory process and legitimate, job-related criteria were used to evaluate the applicants for the Detective Division. (Burton Aff. ¶¶ 3–6, Exh. B.) Plaintiff was not even evaluated in the top half, as determined by his superiors, among the candidates for the Detective position, based upon the twenty-five job related criteria set forth in the evaluation form provided to the Sergeants and Lieutenants. Additionally, Plaintiff did not receive the recommendation of Detective Lieutenant Sullivan, head of the Detective Division, on either of these occasions. Using this process, Chief Burton selected Officer Jose Ferrao for appointment in 2002. (*Id.* at ¶¶ 3–5, 11.) In 2004, using the same criteria and evaluation process, Officer Farrell was selected for the Detective appointment out of eleven applicants. (*Id.* at ¶ 12.) Plaintiff's failure to be recommended by his superiors based upon an evaluation of legitimate, job-related criteria over several other candidates for a single Detective appointment is a legitimate business reason for the Department's decision. *See, e.g., Byrnie v. Town of Cromwell Board of Ed.,* 243 F.3d 93, 104–05 (2d Cir. 2001) ("There is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview.") (quoting *Byrnie v. Town of Cromwell Pub Schs.,* 73 F. Supp. 2d 204, 213 (D.Conn. 1999)); *Lloyd v. WABC-TV*, 879 F. Supp. 394, 402 (S.D.N.Y. 1995) (finding employer's explanation that other

candidates were more qualified than plaintiff for the promotion to be legitimate, non-discriminatory reason); *Brown v. City of New York*, 869 F. Supp. 158, 173 (S.D.N.Y. 1994) (same); *Logan v. New York State Human Rights Appeal Bd.*, 448 N.Y.S.2d 259, 260 (3d Dep't. 1982) (same).

**E.    Plaintiff Cannot Demonstrate that Defendant's Decision Was a Pretext for Discrimination on the Basis of His Race or National Origin**

If Plaintiff can meet his initial burden of stating a *prima facie* case and the Department proffers a legitimate business reason for not selecting him for appointment to the Detective position, the question becomes simply whether the evidence on the record, when viewed in the light most favorable to the Plaintiff, is sufficient to sustain a finding by a reasonable fact-finder that the adverse decision at issue was motivated at least in part by unlawful discrimination. *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (citing *Reeves*, 350 U.S. 133, 142–43).

Viewing the record in this case as a whole, and viewing the facts in a light most favorable to Plaintiff, no rational trier of fact could find that the Department discriminated against Plaintiff because he is a Hispanic or Latino of Puerto Rican national origin when the Chief of Police chose to appoint officers other than Plaintiff and over all other applicants based upon legitimate, job-related criteria and the recommendation of their superiors for the position to the Detective Division. Plaintiff can produce no evidence that he was the more qualified for the appointments received by Officer Stymiloski or Officer Farrell. He neglected to take any depositions during discovery, including that of Chief Burton, the decision-maker, the Lieutenant in charge of Detectives, William Sullivan, or any comparitors such as Officers Farrell, Ferrao, or Stymiloski. (*See* Fuchs Decl. ¶ 19, Exh. 6.) Moreover, Plaintiff admits that he is unaware of any Department supervisors or decision-makers making slurs or derogatory statements about Puerto

Ricans or Hispanics, or any other evidence of discriminatory animus towards Hispanics or Latinos by the decision makers in the Department. (Plaintiff Dep. 97:5–21.)[7]

In the absence of any direct proof, Plaintiff relies entirely upon his own, subjective, and unsupported opinion. Plaintiff testified that he thinks he was not selected for the Detective position "[m]aybe because" he is Puerto Rican, and came to that conclusion because he can not "see any other reason" why he should not have been selected (Plaintiff Dep. 93:3–94:3.) Plaintiff's speculation is not evidence of discrimination. *See, e.g., Cameron v. Cmty Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003); *Holt*, 95 F.3d at 130 (assertion of personal beliefs is insufficient to show pretext); *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 598–99 (S.D.N.Y. 2007) (summary judgment granted where sole evidence presented was that plaintiffs were African-American and others were not, and one comment that a comparator received "preferential treatment"); *Gajjar v. Union College*, No. 00-CV-0718, 2002 U.S. Dist. LEXIS 1475, *20–*21 (N.D.N.Y. Jan. 24, 2002) (granting summary judgment for defendant on plaintiff's failure to promote claim, finding plaintiff's "wholly conclusory allegation" that defendant's decision not to promote him "might have been because of race" to be insufficient to create an inference of discriminatory motive).

Plaintiff also claims that he was more qualified than the officers chosen for the Detective appointments because of his Spanish-speaking abilities, his seniority, his "knowledge of the streets" and the Latino community, and the respect he alleges he receives from the

---

[7] Plaintiff testified that "fliers" of a newspaper article concerning a petition that was circulated in the community requesting Plaintiff's promotion were posted in the Department's locker room with the term "scab" written on them. (Complaint, Exh. B, annexed to Fuchs Decl. as part of Exh. 3.) Plaintiff admitted that he had never heard the word "scab" used derogatorily in relation to Puerto Ricans or Hispanics. (*Id.* at 99:9–11.) The posting of this article with "scab" written on it does not present evidence of race or national origin animus. Though the word "scab" may be derogatory in a labor relations context, it has no connection with Plaintiff's race or national origin; therefore, it cannot be

community. (*Id.* at 110:23–111:7.)  Plaintiff's view of his own qualifications is not only self-serving, but it is irrelevant in the employment discrimination analysis.  *See Holt*, 95 F.3d at 123 (granting summary judgment on plaintiff's Title VII "failure to promote" claim because plaintiff's opinion that she was more qualified than those selected for the position did not demonstrate that defendant's proffered legitimate, non-discriminatory reason for doing so was pretext); *Evans v. New York Botanical Garden*, 253 F. Supp. 2d 650, 660 (S.D.N.Y. 2003) (collecting cases).  Moreover, his assertion that he was more qualified than the other candidates for the position is specious given that neither seniority nor fluency in Spanish were criteria in the Detective appointment selection process (Burton Aff. ¶ 11–12), and Plaintiff's admission that he was never told by anyone that they were relevant criteria. (Plaintiff Dep. 84:8–20.)  His claim is further undermined by (1) his inability to identify the criteria used to evaluate applicants for the position (*Id.* at 83:14–22; 91:12–22); (2) his unfamiliarity with the duties of Detectives as outlined in the Department's police manual (*Id.* at 51:7-52:18); and (3) his admission that he is unaware of the qualifications of the other police officers that applied for the position. (*Id.* at 82:13–20; 90:17–23.)

Plaintiff's position is further weakened by the fact that he overstates the role his language skill plays in the Department.  No evidence on the record supports his contention that his language skills rendered him more qualified than other candidates for the Detective appointment.  He also neglects to mention that the Village pays him, and other officers who speak a second language, a stipend of $1,000 per year for their use of that skill on the job. (Burton Aff. ¶ 17.)  Several other police officers and Village Constables assist and have assisted in Spanish translation for the Department during victim and suspect interviews.  (*Id.* at ¶ 18).

---

construed as a derogatory term in this context.  Plaintiff was also unfamiliar with the word's use in a labor relations context. (Plaintiff Dep. 98:22–99:8.)

Moreover, Plaintiff's claim that the Department's Detective appointments to date have failed to address the community's "need" for a Spanish-speaking and Hispanic Detective is simply Plaintiff's opinion, not evidence of discrimination. (*Id.* at 111:10–112:13.)    *See Rosen v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 11111, *20–*23, No. 92 Civ. 6330 (S.D.N.Y. 1995) (plaintiff's perceptions of his own qualifications did not raise an inference to create a triable issue of fact); *Carlton v. Interfaith Medical Ctr.*, 612 F.Supp. 118, 122 (E.D.N.Y. 1985) ("it is the perception of the decision maker, and not that of the plaintiff, which is relevant").

This case illustrates exactly what is *not* unlawful discrimination, and when summary judgment is warranted.  Plaintiff can present no evidence by which a fact finder could conclude that discriminatory animus played any part in the selection of Detectives by the Department.  Plaintiff simply feels that the Department made the wrong decision, and should have chosen him instead.  Plaintiff asks this Court to substitute his proposed self-serving criteria—his Spanish-speaking abilities and his allegedly subjective claims as to his knowledge of the streets and the Hispanic community (*Id.* at 110:23–111:7) —for the designated, job-related criteria applied by the Department.  Plaintiff cannot demonstrate that the Department's selection process was a pretext for discrimination on the basis of his race or national origin.  Additionally, Plaintiff's conclusory allegations that "maybe" he was not appointed Detective because he is Puerto Rican and Hispanic, and opinion that the Department has ignored the community's need for Hispanic or Latino, Spanish-speaking Detectives are not evidence, let alone evidence sufficient to demonstrate that the reasons proffered by the Department for its decisions are merely a pretext for discriminatory animus.

In this case, Plaintiff asks the Court to do nothing less than step into the shoes of the Village of Ossining Board of Trustees and overturn the decision of the Chief of Police with

respect to who he appoints Detective, applying the criteria that Plaintiff feels are appropriate, rather than deciding whether the Department unlawfully discriminated against Plaintiff. However, this is not the role of the Court. As the Second Circuit has noted: "[T]he Court must respect the employer's unfettered discretion to choose among qualified candidates." *Byrnie*, 243 F.3d at 104 (quoting *Fishbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)). Indeed, the Court's "role is to prevent unlawful hiring practices, not to act as 'super personnel department' that second guesses employers' business judgments." *Id.* (quoting *Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999), *cert. denied,* 528 U.S. 815 (1999)).

Plaintiff is literally suing the Department to force it to engage in reverse discrimination, asking it to abandon its race and national origin neutral staffing decision and selection process with respect the Detective Division, and force the Department to make a race-based employment decision by appointing a Detective on the basis of his or her Hispanic or Latino national origin. By doing so, the Village of Ossining would be exposed to legal action by those qualified officers who applied for the position, but are then passed over for the position because they do not meet Plaintiff's own criteria. Accordingly, Plaintiff cannot defeat summary judgment simply by asking the Court to agree with his belief that the Village of Ossining should have a Spanish-speaking Detective who is familiar with its Hispanic or Latino community. Rather, he must produce evidence supporting a finding that his Hispanic or Latino national origin was the true reason he was not chosen for a Detective appointment. He simply cannot do so. Consequently, summary judgment dismissing Plaintiff's discrimination claims under § 1981 and the NYHRL should be granted.

## II.  PLAINTIFF CANNOT DEMONSTRATE THAT THERE IS A TRIABLE ISSUE OF FACT SUPPORTING HIS RETALIATION CLAIM

### A.  The Plaintiff Cannot Establish a *Prima Facie* Claim of Retaliation

In order to establish a *prima facie* case of unlawful retaliation, Plaintiff must establish a) participation in a protected activity, b) knowledge by plaintiff's employer of the protected activity, c) that plaintiff suffered a "materially adverse" action and d) that there is a causal connection between the protected activity and the materially adverse action. *See, e.g., Garcia v. New York City ACS*, No. 03 Civ 05271, 2007 U.S. Dist. LEXIS 71273, *20 (S.D.N.Y. Sept. 27, 2007) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 282 (2d Cir. 2001)). To demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. ___, 126 S.Ct. 2405, 2415 (2006) (internal quotations omitted). If a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to defendant to provide a legitimate non-retaliatory reason for the alleged adverse action. If defendant carries this burden, then the plaintiff must demonstrate that this reason was pretextual. *Garcia*, No. 03 Civ. 05271, 2007 U.S. Dist. LEXIS 71273, *42–*43.

### 1.  Plaintiff Did Not Engage in Protected Activity

42 U.S.C. §2000e-3 states that to constitute protected activity, the *employee* must have opposed the unlawful practice or the employee must have made a charge, testified, assisted or participated in any manner in an investigate, proceeding or hearing under Title VII. Plaintiff's retaliation claim fails to satisfy even the first element of a *prima facie* case. The Complaint itself does not explain in what protected activity Plaintiff engaged. Rather, it states that he is a

member of a protected class, received a commendation in 2003, and that an article was posted in 2003 referring to him as a "scab." It then alleges that Plaintiff engaged in protected activity because of his race/ethnicity, and states that he was "isolated and shunned by Department and denied the position of Detective." (Complaint ¶¶ 18–32.) When asked during his deposition to explain why he claimed in this lawsuit that the Department had retaliated against him, Plaintiff testified that he was retaliated against by not being appointed to Detective, and that the protected activity in which he engaged was "submitting his resume and cover letter to become a Detective." (Plaintiff Dep. 113:8–114:8.) In other words, Plaintiff explained that he believes he was retaliated against for seeking a Detective appointment.

This is not the type of activity that is protected by the retaliation proscriptions of § 1981, the New York Human Rights Law, or Title VII. "[T]he term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3); *see also, e.g., Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134-35 (2d Cir.) (discussing scope of statute's "protected activity" provision), *cert. denied,* 145 L. Ed. 2d 310, 120 S. Ct. 398 (1999). More specifically, only activity that is in fact protected under § 1981, such as complaints of race discrimination, may be the subject of retaliation claims. The NYHRL prohibits discharging or otherwise discriminating against any person who opposes any practices proscribed by the NYHRL because he has filed a complaint, testified, or assisted in any proceeding under the NYHRL. *See, e.g., Becket v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234 (S.D.N.Y. 1995); *New York State Office of Mental Retardation and Development Disabilities v. State Div. of Human Rights*, 563 N.Y.S.2d 286 (3d Dep't 1990).

Title VII requires that, to constitute protected activity, the employee must have opposed an unlawful practice. *Cruz*, 202 F.3d at 566. Plaintiff does not contend that he was retaliated against for filing his charge of discrimination with the EEOC, nor could he have been, since the denials of promotion Plaintiff complains of in this action occurred *prior* to his filing the EEOC claim in February 2005. Furthermore, Plaintiff never filed a grievance with his union in connection with his being denied promotion to Detective, or asked the union to raise the issue of the Detective appointment procedure as a negotiating point in bargaining. (Plaintiff Dep. 19:10–20).

With respect to the petition circulated in the community that requested Plaintiff's promotion to Detective, and the posting of the article covering the petition with the expression "scab," written thereon, Plaintiff testified that he did not organize and was not in any way involved with this petition. (*Id.* at 99:15–100:10.) He further submitted a memorandum to Chief Burton dated October 28, 2003, explaining that he had absolutely nothing to do with either the petition or the rally, and expressing that, as a longtime member of the Department, he felt disrespect because of the posting of the article. (Fuchs Decl. ¶ 9, Exh. 5.) Plaintiff's memorandum to Chief Burton does not complain of discrimination, or about the Detective selection process, or that he was not selected for Detective, or that the word "scab" or any thing else in his employment with the Department had racial or ethnic overtones. (*Id.*) Plaintiff had never heard of the term used as a derogatory term for Hispanics or Puerto Ricans. Rather, he interpreted the term as meaning "like a disease or cancer to the rest of the Police Department." (Plaintiff Dep. 98:22–99:5.)

Accordingly, Plaintiff took no action to oppose an alleged unlawful practice, and has not engaged in protected activity within the meaning of 42 U.S.C. 2000e-3. "Title VII makes

- 22 -

it unlawful for employers to retaliate against employees who *participate* in protected activities, such as challenging discriminatory practices or actions." *Raczka v. Potter*, No. 04 CV 737S, 2007 U.S. Dist. LEXIS 27395 (W.D.N.Y. Mar. 30, 2007) (emphasis added) (citing 42 U.S.C. § 2000e-3(a)); *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). As Plaintiff did not participate in this event, it cannot be considered protected activity. *Id.*

Consequently, Plaintiff has alleged no protected activity cognizable under a § 1981 or NYHRL retaliation claim.

### 2. Plaintiff's Retaliation Claim is Duplicative of his Discrimination Claims

Even assuming that Plaintiff could satisfy the first element of a retaliation claim, Plaintiff's retaliation claim is duplicative of his discrimination claim to the extent that they are based on the same allegations—that he was denied a Detective appointment. (Plaintiff's Dep. 113:8–114:8.)  "The gravamen of a retaliation claim under § 1981 is the allegation of discriminatory treatment because of the filing of a discrimination charge [or participation in the investigation of such charge], *as distinct from* discriminatory treatment on account of race or color in the first instance." *Choudhury*, 735 F.2d at 44 (emphasis added).  By his own description, Plaintiff's retaliation claim is merely his discrimination claim by another name; therefore, as his discrimination claim is insufficient as a matter of law and warrants summary judgment, so does his retaliation claim.

### 3. There is No Evidence Connecting the October 28, 2003 Article to an Adverse Action

Finally, even if Plaintiff had engaged in protected activity with respect to the October 28, 2003 petition and article, which he did not, as with his discrimination claim, his substantive retaliation claims fail on the same basis as his discrimination claims—that is, the

- 23 -

record is devoid of any evidence to support an inference that he suffered an adverse action as a result of that activity.

First, if the adverse action alleged by the ambiguously drafted Complaint is the posting of the October 28, 2003 article itself with the word "scab" written thereon, resulting in Plaintiff's being "shunned and isolated," even under the Supreme Court's recent clarification in *Burlington N. and Santa Fe. Ry. Co. v. White*, this is not an action that would have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See, e.g., Kessler v. Westchester Cty. Dept. of Social Svcs.*, 461 F.3d 199, 207–09 (2d Cir. 2006); *Chamberlin v. Principi*, No. 06-1291-cv, 2007 U.S. App. LEXIS 21829, *7–*8 (2d Cir. Sept. 12, 2007) (affirming summary for defendant on plaintiff's retaliation claim where there was insufficient causal connection between the adverse employment action and the plaintiff's protected activity (filing EEOC complaints), there was no harm caused by the alleged "retaliatory" action, and it was not an action that would have been considered materially adverse by a reasonable worker). Specifically, Plaintiff, who immediately brought the posting incident to Chief Burton's attention in October 2003 (Fuchs Decl., Exh. 5), filed a Charge of Discrimination with the EEOC in February 2005, at which time this incident did not seem important enough to Plaintiff to even mention. Rather, it seems to have been thrown into the Complaint in this proceeding as an afterthought by subsequent counsel.

Moreover, posting of the article itself obviously did not affect any material terms and conditions of Plaintiff's employment. *See Pearson*, 499 F. Supp. 2d at 595–96 ("A materially adverse change may be indicated by a termination of employment; a demotion with a decrease in wage or salary or a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other indices unique to a particular situation. Whether a

particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances") (internal quotations and citations omitted). Plaintiff does not allege that the posting of the article affected him in any materially adverse way.

If, however, the adverse action alleged is the denial of Detective appointments as Plaintiff asserted in deposition, as with Plaintiff's discrimination claims, there is no evidence in the record supporting a finding that the legitimate business reasons articulated by the Department for the selection of individuals other that Plaintiff for the Detective appointments was in reality a pretext for retaliation because of any manner of protected activity.

Accordingly, Plaintiff's retaliation claim should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectful requests that summary judgment be granted in its favor dismissing Plaintiff's claims against it, and that the Court grant such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              December 13, 2007

                                          /s/
                                          _____
                                          Stephen A. Fuchs (SF-5407)
                                          LITTLER MENDELSON, P.C.
                                          885 Third Avenue, 16th Floor
                                          New York, New York 10022
                                          (212) 583-9600

                                          Attorneys for Defendant
                                          Village of Ossining Police Department