UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Diego Santiago,

        Plaintiff,

-against-

The Village of Ossining Police Department,

        Defendant.

---

Index No. 06 CV 5422 (CLB) (GAY)

**AFFIDAVIT OF CHIEF OF POLICE JOSEPH BURTON, JR.**

STATE OF NEW YORK    )
                              ) ss:
COUNTY OF WESTCHESTER )

CHIEF JOSEPH BURTON, JR., being duly sworn, deposes and says:

1. I am the Chief of Police of the Village of Ossining Police Department ("the Department"). I have held this position during all times relevant to this action. I make this affidavit in support of Defendants' Motion for Summary Judgment seeking dismissal of the complaint with prejudice. The statements set forth below are made from my personal knowledge as Chief of Police during all relevant times.

2. Officer Diego Santiago's allegation that he was denied appointment to the position of Police Detective on the basis of is race or national origin is false. Decisions to appoint police officers to the position of Detective are made based on a non-discriminatory procedure, based upon an evaluation of legitimate, non-discriminatory, and job-related criteria. Indeed, of the Department's five Detectives, one, Jose Ferrao, I am aware is Hispanic or Latino of Brazilian national origin. I selected Detective Ferrao for appointment in June 2002. Additionally, one of the nine Sergeants in the Village of Ossining Police Department, George

Byrne, I am aware happens to be of Mexican national origin. I selected Sergeant Byrne for promotion in February 2005. Sergeant Byrne also speaks fluent Spanish.

3. When there is a vacancy for the appointment of a police officer to the position of Detective, I send out an email advising the Department of the vacancy, and any officer who is interested may apply for appointment to the position by submitting a cover letter and resume. A true and accurate copy of the email sent out in regarding a vacancy for the Detective position in 2004 is attached hereto as Exhibit A. The procedure set forth below is then applied to select the most qualified police officer among all interested applicants for the position.

4. First, all Sergeants and Lieutenants in the Department are provided an evaluation form, listing a number of job related criteria including performance areas such as supervisory skills, handling assignments, knowledge of laws and ordinances, community interaction, comprehension of police procedures, and report writing, and behavioral dimensions such as leadership skills, communications skills, and police ethics. A true and accurate copy of the memoranda sent to Sergeants and Lieutenants for the Evaluations in 2004 is attached hereto as Exhibit B. Neither ability to speak Spanish nor seniority are factors in the evaluations given to the Sergeants or the Lieutenants. With the evaluations, the Sergeants and Lieutenants are given the resumes of all interested police officers, and are instructed to evaluate each candidate with respect to the job-related criteria, giving them an overall ranking from first to last.

5. The evaluations are then returned to me, and I review each one. I consider the content and overall rankings set forth in the evaluations. The Sergeants and Lieutenants' evaluations are used as input, but are not dispositive, of which candidate I choose to appoint to the Detective position. Once all evaluations have been completed and reviewed, I consult the Lieutenant in charge of the Detective Division, Detective Lieutenant William V. Sullivan, to

2

discuss the candidates. The Lieutenant makes a recommendation as to which candidate he believes will do the best job as a Detective. I then consider all of the above information, and appoint the strongest candidate for the Detective position.

6. This process occurred only twice during the time period raised by Officer Santiago in his Complaint—in 2002 and 2004. On neither occasion was officer Santiago evaluated high enough for him to be appointed to the Detective position.

7. With respect to the Detective appointments for which Officer Santiago claims he applied, no police officers were appointed to the Department's Detective Division in 2001 or 2003. Accordingly, Officer Santiago was not denied a Detective appointment in those years.

8. On May 8, 2000, Police Officer John Girolamo was appointed to Detective within his duties as a Youth Officer, without any change in his duties. This was a distinct, non-competitive appointment for which there was no selection or evaluation process, unlike the later 2002 and 2004 appointments. No applications were solicited for the appointment; and no other Police Officers within the Department were qualified for this appointment. Officer Girolamo had been working as a Youth Officer and was a certified Drug Abuse Resistance Education ("D.A.R.E.") and a certified School Resource Officer ("S.R.O."). Officer Santiago did not have these qualifications, and neither he nor any other Police Officer were denied the Detective appointment that Officer Girolamo was granted.

9. On August 30, 2004, Police Officer Paul Stymiloski was appointed to a uniformed Detective position within his duties as a Traffic Specialist, without any change in those duties. This appointment was distinct from all other appointments, and Officer Stymiloski was the only Department member considered for this appointment because of his unique experience in use of traffic equipment, details, certifications, and training. This was not a

3

competitive appointment, and no applications were solicited from other Police Officers in the Department. Officer Stymiloski alone was performing the Traffic Specialist duties prior to his promotion. He was a certified Accident Investigator, and had completed several relevant traffic specialist courses and seminars that other Department members had not completed, such as Commercial Vehicle Enforcement, Skid Locks and Braking Systems, LoJack Stolen Vehicle Police Recovery Systems, and other traffic systems courses.

10. No evaluations were completed for Officer Stymiloski's appointment to Detective, and Officer Santiago had never expressed interest in this appointment. Neither Officer Santiago nor any other Department members were therefore denied a Detective appointment at the time Officer Stymiloski received the appointment.

11. On June 24, 2002, Police Officer Jose Ferrao, who is known to me to be Hispanic or Latino of Brazilian national origin, was appointed to a Detective position. I announced Ferrao's appointment in an email to the Department on May 24, 2002, which also explained the process used to reach my decision. A true and accurate copy of my May 24, 2002 email is attached as Exhibit C. Detective Ferrao was chosen as the strongest candidate for the position at that time over all other candidates based upon, among other qualities, his leadership skills, knowledge of laws, attendance, and application of Department procedures. Officer Santiago was not among the top candidates for this appointment based upon these criteria. Neither the ability to speak Spanish, nor seniority, were criteria for appointment to Detective.

12. On September 27, 2004, I appointed Police Officer Donald Farrell to the Detective position. The Sergeants and Lieutenant again evaluated Donald Farrell highest in terms of his performance, and Detective Lieutenant Sullivan and I agreed that he was the strongest remaining candidate for Detective appointment. Officer Farrell was chosen as the best

4

candidate at the time because of his particular strengths in knowledge of laws and ordinances, leadership skills and attendance, among other qualities. Officer Santiago did not rank high enough to be appointed for this Detective position. Of some eleven officers applying for the position in 2004, Officer Santiago was in the bottom half of the candidates, in the view of his superiors. Neither the ability to speak Spanish nor seniority were criteria for selection to the Detective position.

13. Officer Santiago's race and national origin did not play any role whatsoever in his not being appointed to the Detective position in either 2004 or 2002. Rather, on both occasions, he was not selected by me for the appointment because he was not evaluated among the most qualified candidates for the appointment by the Sergeants and Lieutenants who worked with him, applying the performance and behavioral criteria set forth in the evaluations, he was not recommended by the Lieutenant in charge of the Detective Division as the strongest candidate for the appointment based, and he was not, in my judgment, the strongest individual candidate for appointment to Detective.

14. Other individuals who happen to be of Hispanic or Latino race and national origin have been selected for appointment to the Detective Division, and to the even more prestigious position of Sergeant. The procedure for appointing Sergeants is similar to that used to appoint Detectives; the only difference is that the candidates are determined by a Civil Service Examination, rather than by submission of a resume and cover letter.

15. Specifically, the Department currently employs five Detectives out of 60 officers. Of those five, one, Jose Ferrao, is Hispanic or Latino. Of the Department's 60 officers, ten are Hispanic or Latino.

16. The Department also has nine Sergeants, each of whom are selected through a procedure which is similar to that used to select Detectives, except that the candidates are determined by a civil service eligibility list which determines the top three candidates. The position of Sergeant outranks the position of Detective. When there is a vacancy for Sergeant, I select the candidate for promotion, with the input of the Lieutenants and Sergeants. Of these nine Sergeants in the Department, one, George Byrne, is known to me to be of Mexican national origin and speaks fluent Spanish. I selected George Byrne for promotion to Sergeant in February 2005. Sergeant Byrne was officially appointed to Sergeant by resolution of the Village of Ossining's Village Board on February 16, 2005, before the Department received Officer Santiago's EEOC charge. A true and accurate copy of the February 16, 2005 Village of Ossining Board of Trustees resolution appointing George Byrne to the rank of Sergeant is attached hereto as Exhibit D. A true and accurate copy of Officer Santiago's United States Equal Employment Opportunity Commission Charge bearing the Department's internal stamp indicating that it was received on March 4, 2005 by the Department is attached hereto as Exhibit E. I was completely unaware of Officer Santiago's Complaint of Discrimination until the Charge of Discrimination was received.

17. Officer Santiago receives a stipend of $1000 per year from the Department as additional compensation for application of his bilingual abilities. Five other officers also receive stipends for their bilingual abilities, two of whom, Officer Antonio Rodriguez, and Officer Jafeth Chavez, receive the stipend for Spanish fluency.

18. Officer Santiago's Spanish language skills are not unique to the Department. Other current and former employees of the Department and Village of Ossining who speak Spanish and who have been used by the Department as translators during the relevant time

period include the aforementioned Officers Rodriguez and Chavez, Marvise Rennalls, Joseph Bracero, Juan Encarnacion, Johnathon Colon, Javier Lugo, Gregory Jacquin, and Village Court Constable Carlos Castro.

19. Before Officer Santiago filed a charge with the Equal Employment Opportunity Commission, he never came to me to voice his belief that the Detective appointments or the Detective appointment procedures were discriminatory.

20. Accordingly, Officer Santiago's allegations that he has been denied promotions on the basis of his national origin or retaliated against for complaints of discrimination are entirely without merit.

21. The petition and related rally occurring in October 2003, in which a number of individuals urged the Department to appoint Officer Santiago to the position of Detective, was not a factor in any manner in the selection of individuals other than Officer Santiago to the position of Detective.

_____
Chief Joseph Burton, Jr.

Sworn to and subscribed before me this
11 day of December, 2007

_____
Notary Public

RAYMOND R. BALAAM
Notary Public, State of New York
No. 01BA...
Filed in Westchester County
Term Expires 8/31/10

7