LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
    The Village of Ossining Police Department
885 Third Avenue, 16th Floor
New York, NY 10022.4834
212.583.9600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIEGO SANTIAGO,

　　　　　　　Plaintiff,

-against-

THE VILLAGE OF OSSINING POLICE DEPARTMENT,

　　　　　　　Defendant.

Index No. 06 CV 5422 (CLB) (GAY)

**DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

TO:　Paul Cisternino, Esq.
　　　701 Westchester Avenue,
　　　Suite 308W
　　　White Plains, NY 10604
　　　Attorney for Plaintiff

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant Village of Ossining Police Department ("the Department") by and through its undersigned attorneys, hereby submits its statement of material facts as to which there is no genuine issue to be tried.

　　1.　Plaintiff Officer Diego Santiago is a police officer with the Department and is Hispanic or Latino and of Puerto Rican national origin. (Plaintiff Dep. 25:5–7.)[1]

---

[1] "Plaintiff. Dep." refers to excerpts from the April 11, 2007 deposition of Plaintiff Police Officer Diego Santiago. References are to page and line numbers. Thus, "Plaintiff Dep. 41:23–25" refers to page 41,

2. On or about February 5, 2005, Officer Santiago filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Fuchs Decl. ¶ 2, Exh. 1.) In that charge, Officer Santiago claimed that he was denied promotions to the Department's Detective Division on the basis of his race and national origin in 2001, 2002, 2003, and 2004. (*Id.*)

3. On April 21, 2006, the EEOC issued its determination, dismissing Officer Santiago's charge, stating that the evidence obtained during its investigation did not establish that a violation of the law occurred. (*Id.* at ¶ 3, Exh. 2.) The EEOC also provided Officer Santiago with a 90-day "Right to Sue" notice. (*Id.*)

4. On July 5, 2006, Officer Santiago filed a Complaint in the United States District Court for the Southern District of New York, again alleging that he was discriminated against on the basis of race and national origin for the promotions to Detective. (*Id.* at ¶ 4, Exh. 3.)

5. The parties each served and responded to written discovery requests. (*Id.* at ¶ 5.) On April 11, 2007, Officer Santiago was deposed by counsel for the Department. (*Id.*)

6. Plaintiff admitted that he never heard any of his supervisors or any of the decision-makers for the Detective appointments make slurs or derogatory statements about Puerto Ricans or Hispanics. (*Id.* at 97:5–21.)

7. Officer Santiago had no involvement of any kind with the petition concerning him that was circulated in the community encouraging the Village of Ossining to appoint him to Detective in October 2003. (*Id.* at 99:15–100:10.) Officer Santiago sent a memorandum to Chief Joseph Burton, Jr. dated October 28, 2003, stating

that he had absolutely nothing to do with either the petition or a rally related to the petition. (Fuchs Decl. ¶ 9, Exh. 5.)

8. No police officer was appointed to the Department's Detective Division in 2001 or 2003. (Burton Aff. ¶ 7.)[2] Plaintiff did not possess the certifications that the officers who were promoted to uniformed Detective positions in 2000 and 2004, Officers John Giralomo and Paul Stymiloski, have. (Plaintiff Dep. 73:7–11; 76:17–79:18.)

9. On May 8, 2000, Police Officer John Girolamo was appointed to Detective within his duties as a Youth Officer, without any change in his duties. (*Id.* at ¶ 9.) This was a distinct, non-competitive appointment for which there was no selection or evaluation process, unlike the later 2002 and 2004 appointments. (*Id.*) No applications were solicited for the appointment; and no other Police Officers within the Department were qualified for this appointment. (*Id.*) Officer Girolamo had been working as a Youth Officer and was a certified Drug Abuse Resistance Education ("D.A.R.E.") and a certified School Resource Officer ("S.R.O."). (*Id.*) Officer Santiago did not have these qualifications, and neither he nor any other Police Officer were denied the Detective appointment that Officer Girolamo was granted. (*Id.*)

10. On August 30, 2004, Police Officer Paul Stymiloski was appointed to a uniformed Detective position within his duties as a Traffic Specialist, without any change in those duties. (*Id.* at ¶ 10.) This appointment was distinct from all other appointments, and Officer Stymiloski was the only Department member considered for this appointment because of his unique experience in use of traffic equipment, details, certifications, and training. (*Id.*) This was not a competitive appointment, and no applications were

---

[2] "Burton Aff." refers to the Affidavit of Chief of Police Joseph Burton, Jr., dated December 11, 2007, and the exhibits attached thereto.

3

solicited from other Police Officers in the Department. Officer Stymiloski alone was performing the Traffic Specialist duties prior to his promotion. (*Id.*) He was a certified Accident Investigator, and had completed several relevant traffic specialist courses and seminars that other Department members had not completed, such as Commercial Vehicle Enforcement, Skid Locks and Braking Systems, LoJack Stolen Vehicle Police Recovery Systems, and other traffic systems courses. (*Id.*)

11.  No evaluations were completed for Officer Stymiloski's appointment to Detective, and Officer Santiago had never expressed interest in this appointment. (*Id.* at ¶ 11.) Neither Officer Santiago nor any other Department members were therefore denied a Detective appointment at the time Officer Stymiloski received the appointment.

12.  In 2002 and 2004, there were vacancies in the Detective Division for a plainclothes Detective. (*Id.* at ¶ 6.) These were competitive promotions for which Chief Burton followed the same procedure on each occasion. (*Id.* at ¶¶ 3–6, 11–12.)

13.  First, Chief Burton sent out an email advising the Department of the vacancy, and indicating that any officer who is interested may apply for the position by submitting a cover letter and resume. (*Id.* at ¶ 3, Exh. A.) The procedure set forth below was then applied to select the most qualified police officer among all interested applicants for the position. (*Id.*)

14.  First, all Sergeants and Lieutenants in the Department were provided an evaluation form, listing a number of job related criteria including performance areas such as supervisory skills, handling assignments, knowledge of laws and ordinances, community interaction, comprehension of police procedures, and report writing, and behavioral dimensions such as leadership skills, communications skills, and police ethics.

(*Id.* at ¶ 4, Exh. B.) Neither ability to speak Spanish nor seniority were factors in the evaluations given to the Sergeants or the Lieutenants. (*Id.*) With the evaluations, the Sergeants and Lieutenants were given the resumes of all interested police officers, and were instructed to evaluate each candidate with respect to the job-related criteria, giving them an overall ranking from first to last. (*Id.*)

15. The evaluations were then returned to Chief Burton, who reviews each one. (*Id.* at ¶ 5.) Chief Burton considered the content and overall rankings set forth in the evaluations, and used the evaluations as input regarding which candidate he will appoint to the Detective position. (*Id.*) Once all evaluations were completed and reviewed, Chief Burton consulted the Lieutenant in charge of the Detective Division, Detective Lieutenant William V. Sullivan, to discuss the candidates. (*Id.*) The Lieutenant made a recommendation as to which candidate he believes will do the best job as a Detective. (*Id.*) Chief Burton then considered all of the above information, and appointed the strongest candidate for the Detective position. (*Id.*)

16. This process occurred twice during the time period raised by Officer Santiago in his Complaint. (*Id.* at ¶ 6.) On neither occasion were the ratings Officer Santiago received high enough for him to receive the Detective appointments. (*Id.*)

17. On June 24, 2002, Police Officer Jose Ferrao, who is Hispanic or Latino of Brazilian national origin, was appointed by Chief Burton to a Detective position. (*Id.* at ¶ 11.)

18. Chief Burton announced Ferrao's appointment in an email to the Department on May 24, 2002, which also explained the process used to reach his decision. (*Id.*, Exh. C.) Officer Santiago was not among the top candidates for this

5

appointment based upon job-related criteria, such as, leadership skills, knowledge of laws, attendance, and application of Department procedures.

19. Neither the ability to speak Spanish, nor seniority, were ever criteria for appointment to Detective. (*Id.*)

20. On September 27, 2004, Chief Burton appointed Police Officer Donald Farrell to the Detective position. (*Id.* at ¶ 12.) The Sergeants and Lieutenants evaluated Donald Farrell highest in terms of his performance, and Detective Lieutenant Sullivan and Chief Burton agreed that he was the strongest remaining candidate for Detective appointment. (*Id.*) Officer Santiago did not rank high enough to be appointed to this Detective position. (*Id.*) Of some eleven officers applying for the position, including Plaintiff, officer Santiago was in the lower half. (*Id.*) Again, neither the ability to speak Spanish nor seniority were criteria for selection to the Detective position. (*Id.*)

21. Chief Burton has selected individuals of Hispanic or Latino race and national origin for appointment to the Detective Division, and to the even more prestigious position of Sergeant. (*Id.* at ¶ 14.) The procedure for appointing Sergeants is similar to that used to appoint Detectives; the only difference is that the candidates are determined by a Civil Service Examination, rather than by submission of a resume and cover letter. (*Id.*)

22. Specifically, the Department currently employs five Detectives out of 60 officers. (*Id.* at ¶ 15.) Of those five, one, Jose Ferrao, is Hispanic or Latino. (*Id.*) Of the Department's 60 officers, ten are Hispanic or Latino. (*Id.*)

23. The Department also has nine Sergeants, each of whom are selected through a procedure which is similar to that used to select Detectives, except that the

candidates are determined by a civil service eligibility list which determines the top three candidates. (*Id.* at ¶ 16.) The position of Sergeant outranks the position of Detective. (*Id.*) When there is a vacancy for Sergeant, Chief Burton selects the candidate for promotion, with the input of the Lieutenants and Sergeants. (*Id.*)

24.   Of these nine Sergeants in the Department, one, George Byrne, is of Mexican national origin and speaks fluent Spanish. (*Id.*) Chief Burton selected George Byrne for promotion to Sergeant in February 2005. (*Id.*)

25.   Sergeant Byrne was officially appointed to Sergeant by resolution of the Village of Ossining's Village Board on February 16, 2005, before the Department received Officer Santiago's EEOC charge. (*Id.*, Exhs. D, E.) Chief Burton and the Department were unaware of Officer Santiago's Charge of Discrimination until the Charge of Discrimination was received. (*Id.*)

26.   Officer Santiago receives a stipend of $1000 per year from the Department as additional compensation for application of his bilingual abilities. (*Id.* at ¶ 17.) Five (5) other officers also receive stipends for their bilingual abilities, two (2) of whom, Officer Antonio Rodriguez, and Officer Jafeth Chavez, receive the stipend for Spanish fluency. (*Id.*)

27.   Officer Santiago's Spanish language skills are not unique to the Department. (*Id.* at ¶ 18.) Other current and former employees of the Department and Village of Ossining who speak Spanish and who have been used by the Department as translators during the relevant time period include the aforementioned Officers Rodriguez and Chavez, Marvise Rennalls, Joseph Bracero, Juan Encarnacion, Johnathon Colon, Javier Lugo, Gregory Jacquin, and Village Court Constable Carlos Castro. (*Id.*)

28.   Plaintiff's race and national origin played no role in his not being selected for appointment to the position of Detective. (*Id.* at ¶¶ 2, 20.)

29.   Neither the petition urging the Department to appoint Plaintiff to the position of Detective in October 2003, nor the rally reflected in the October 28, 2003 newspaper article played any role in individuals other than Officer Santiago being selected for the position of Detective. (*Id.* at ¶¶ 21.)

Dated: New York, New York
December 13, 2007

LITTLER MENDELSON, P.C.

/s/_____
Stephen A. Fuchs (SF-5407)
885 Third Avenue
New York, NY 10022-4834
(212) 583-9600