UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DIEGO SANTIAGO,
      Plaintiff,

 -against-          <u>Index No.</u> 06 CIV 5422 (CLB)

THE VILLAGE OF OSSINING POLICE
DEPARTMENT,
      Defendant.
-------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW

# IN OPPOSITION TO DEFENDANT'S

# SUMMARY JUDGMENT MOTION


Law Office of Paul N. Cisternino
Attorney for Plaintiff
16 Briarbrook Road
Ossining, NY 10562
(914) 330-1527

## *TABLE OF CONTENTS*

| | |
|---|---|
| **TABLE OF AUTHORITIES** | ii |
| **PRELIMINARY STATEMENT** | 1 |
| **CONTROLLING PRINCIPLES OF LAW** | 2 |
| **ARGUMENT** | 2 |
| **DEFENDANT'S FAILURE TO PROMOTE** | 2 |
| **SECOND ELEMENT OF PLAINTIFF'S PRIMA FACIE CASE** | 3 |
| a) Defendant's Promotion of Patrol Officer Paul Stymiloski | 3 |
| **FOURTH ELEMENT OF PLAINTIFF'S PRIMA FACIE CASE** | 5 |
| a) Defendant's Promotion of Patrol Officer Paul Stymiloski | 5 |
| b) Defendant's Promotion of Patrol Officer Donald Farrell | 6 |
| c) Defendant's Statistics | 7 |
| d) Plaintiff's Recent "Experiences" | 7 |
| **DEFENDANT'S PRETEXT** | 9 |
| **CONCLUSION** | 10 |

# TABLE OF AUTHORITIES

## CASES

*Ackerman v Oryx Communications, Inc.,* 810 F.2d 339 (2d Cir. 1987)    2

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)    2

*Aslandis v. U.S. Lines, Inc.,* 7 F.3d 1067 (2d Cir. 1993)    2

*Belfi v. Prendergast,* 191 F.3d 129 (2d Cir. 1999)    2

*Brown v. Coach Stores, Inc.* 163 F.3d 706 (2d Cir. 1998)    4

*Byrnie v. Town of Cromwell Bd. Of Educ.,* 243 F.3d 93 (2d Cir. 2001)    6

*Chambers v. TRM Copy Centers Corp.,* 43 3d 29 (2d Cir. 1994)    5

*Choudhury v. Polytechnic Inst.,* 735 F.2d 38 (2d Cir. 1984)    2

*Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000)    3

*Mandell v. County of Suffolk,* 316 F.3d 368 (2d Cir. 2003)    3

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)    3

*Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89 (2d Cir. 1999)    3

*Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149 (2d Cir. 1991)    1

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)    9

*Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir. 1995)    2

*Ramseur v. Chase Manhattan Bank,* 865 F.2d 460 (2d Cir. 1989)    2

*Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir. 1991)    5

*St. Mary's Honor Center v. Hicks,* 113 S.Ct. 2742 (1993)    9

*Tomka v. Seiler,* 66 F.3d 1295 (2d Cir. 1995)    1

*Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 2, 69 (2d Cir. 2000)    2

**STATUTES**

*42 U.S.C. Section 1981*                                                 1
*New York State Human Rights Law, Executive Law Sec. 290*                1

**RULES**

*Fed. R. Civ. P. 56(c)*                                                  2

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff, Diego Santiago (hereinafter "Santiago" or "Plaintiff"), brought the instant action under 42 U.S.C. Section 1981 of the Civil Rights Act of 1866 and New York State Human Rights Law, Executive Law Sec. 290, et seq. alleging that the Village of Ossining Police Department ("Ossining Police" or "Defendant") denied him promotions to the rank of Detective based on his Hispanic race and/or Puerto Rican national origin, and retaliated against him. Plaintiff submits this Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment pursuant to Federal Civil Rule 56 and Local Rule 56.1. Although Plaintiff concedes that he was not eligible for the 2001 and 2002 promotions and his claim of retaliation is legally insufficient, the record indicates that significant questions remain about the two (2) 2004 promotions, requiring a trial on the two (2) failure to promote claims.

For a statement of the material facts for which there exist genuine issues to be tried, the Court is respectfully referred to Plaintiff's 56.1 Statement in Opposition to Defendant's Summary Judgment Motion.

### CONTROLLING PRINCIPLES OF LAW

When considering a motion for summary judgment it is axiomatic that all reasonable inferences are drawn in favor of, and the record is assessed in the light most favorable to, the party opposing the motion. Tomka v. Seiler, 66 F.3d 1295, 1304 (2d Cir.1995); Piesco v. City of New York, Dep't of Personnel, 933 F.2d 1149, 1154 (2d Cir.

1991), citing Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989). When facts are presented which are not only disputed but also from which differing conclusions may be drawn, all inferences and conclusions must be drawn in the light most favorable to the non-movant. Quaratino v. Tiffany & Co., 71 F.3d 58, 64-65 (2d Cir. 1995), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Aslandis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993); see also FRCP 56 (c).

The Second Circuit has directed that trial courts "be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).

The movant's failure to demonstrate that there are no genuine issues of material fact means that a trial is required to determine the action. Ackerman v Oryx Communications, Inc., 810 F.2d 339 (2d Cir. 1987). As discussed more fully infra, this case presents genuine issues of material fact that mandate denial of defendant's motion and call for the resolution of the case by the trier of fact.

## ARGUMENT

### DEFENDANT'S FAILURE TO PROMOTE

Claims brought pursuant to Section 1981 and the New York State Human Rights Law are analyzed under the same rubric as Title VII. See e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 2, 69 (2d Cir. 2000) (citations omitted); Choudhury v.

Polytechnic Inst., 735 F.2d 38, 44 (2d Cir. 1984) (Section 1981); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 85 (2d Cir. 1999) (NYHRL).

In order to establish a prima facie case of failure to promote based on race or national origin Plaintiff must show that (1) he was within the protected groups, (2) he applied for the position for which he was qualified, (3) he was rejected for the position or subjected to an adverse employment action, and (4) the circumstances give rise to an inference that there was a discriminatory motive. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). The burden that such a plaintiff must meet in order to defeat summary judgment at the prima facie stage is "not onerous" and has been described as "de minimis." See Howley, 217 F.3d at 150.

As to the first and third prongs, Defendant concedes that Plaintiff has met his burden, as both a Hispanic and Puerto Rican and that he was rejected for the position of Detective. At issue are the second[1] and fourth prongs of the test. Contrary to Defendant's contentions, the denial twice of Plaintiff's promotion in 2004 did occur under circumstances which not only make out a prima facie case but which also give rise to an inference of race discrimination and national origin discrimination. And, in making these evaluations, we have more than just Plaintiff's subjective beliefs to rely on.

## SECOND ELEMENT OF PLAINTIFF'S PRIMA FACIE CASE

### A. DEFENDANT'S PROMOTION OF PATROL OFFICER PAUL STYMILOSKI

The second element of a prima facie case for failure to promote cannot be

---

[1] Defendant contends that only one of the two failure to promote claims does not satisfy the second prong because Police Officer Paul Stymiloski was given a non-competitive promotion.

established merely with evidence that a plaintiff generally requested promotion consideration. See Brown v. Coach Stores, Inc. 163 F.3d 706, 710 (2d Cir. 1998). The rule, however, is not inflexible. The law recognizes that "the facts of a particular case" may sometimes make "a specific application a quixotic requirement." Id. To be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted before it was filled, and (2) the employee either had no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer. Id.

Defendant's Chief Burton noted in his affidavit that when Police Officer Paul Stymiloski was promoted on August 30, 2004 that his appointment was "distinct from all other appointments, and Officer Stymiloski was the only Department member considered for this appointment because of his unique experience…" (Burton Aff. Paragraph 9). According to Chief Burton, "this was not a competitive appointment and no applications were solicited from other Police Officers in his Department. Id. Plaintiff stated that a memorandum never went out advising patrol officers that there was a vacancy for the Detective position filled by Police Officer Stymiloski. (Plaintiff Dep. 79:19-25). Plaintiff also stated that he never had knowledge that there was a vacancy. (Santiago Aff. Paragraph 27). Accordingly, Plaintiff satisfies the second element of a prima facie case for a failure to promote.

## FOURTH ELEMENT OF PLAINTIFF'S PRIMA FACIE CASE

In determining whether the plaintiff has met the de minimis initial burden of showing "circumstances giving rise to an inference of discrimination," the function of the

court on a summary judgment motion is to determine whether the "proffered evidence shows circumstances that would be sufficient to permit a rational trier of fact to infer a discriminatory motive." It is not the province of the summary judgment court itself to decide what inferences should be drawn. See Chambers v. TRM Copy Centers Corp., 43 3d 29, 36 (2d Cir. 1994). Employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law. Ramseur v. Chase Manhattan Bank, 865 F.2d at 464; See also Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (Because an employer who discriminates is unlikely to leave a "smoking gun" attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence).

### A. DEFENDANT'S PROMOTION OF PATROL OFFICER PAUL STYMILOSKI

Defendant promoted Patrol Officer Paul Stymiloski to the rank of Detective on August 30, 2004 through a non-competitive process. (Santiago Aff. Pagragraph 28). Patrol Officer Stymiloski was neither Puerto Rican nor Hispanic. (Santiago Aff. Paragraph 29). Plaintiff stated that he was never informed that there was a vacancy for the position or afforded an opportunity to apply for the position. (Santiago Aff. Paragraph 28). Defendant characterized this appointment as "distinct" from all other appointments. (Burton Aff. Paragraph 9). Chief Burton cited Patrol Officer Stymiloski's traffic specialist duties, certifications as an Accident Investigator and the completion of several specialized courses. Id. Yet, Plaintiff was never afforded the opportunity to attend the specialized traffic management and accident investigation classes and schools that Patrol

Officer Stymiloski was given. (Santiago Aff. Paragraph 31). And Defendant never sent the Plaintiff to any special schools to receive additional training that Patrol Officer Paul Stymiloski was afforded. (Plaintiff Dep. 77: 3-4; 78: 2-24.)

### B. DEFENDANT'S PROMOTION OF PATROL OFFICER DONALD FARRELL

Defendant promoted Patrol Officer Donald Farrell to the rank of Detective on September 27, 2004. (Burton Aff. Paragraph 12.). Patrol Officer Farrell was neither Puerto Rican nor Hispanic. (Santiago Aff. Paragraph 34). Chief Burton noted that Patrol Officer Farrell had particular strengths in knowledge of laws and ordinances, leadership skills and attendance. (Burton Aff. Paragraph 12.). Chief Burton stated that Plaintiff did rank "high enough to be appointed" for this Detective position. Id. Yet, Plaintiff had more experience, including knowledge of the streets, past experience in working with detectives, undercover work, working in other jurisdictions and questioning suspects than Patrol Officer Donald Farrell. (Plaintiff Dep. 92:4-7). Plaintiff had a good attendance record and was considered a leader in the community because of his community policing in the Ossining business district. (Santiago Aff. Paragraph 1 & 3). Plaintiff had twenty-five (25) years as a Patrol Officer at the time and had "above-average" evaluations in 2004, 2005 and 2006. (Santiago Aff. Paragraph 6-7).

Further, Defendant relied on a vague and purely subjective promotion process that did not consider objective factors and ultimately discriminated against Plaintiff. See Byrnie v. Town of Cromwell Bd. Of Educ., 243 F.3d 93, 104 (2d Cir. 2001) (An employer may not rely solely on wholly subjective and unarticulated standards as a basis for its promotion decisions). Chief Burton's memorandum dated June 25, 2004 entitled

"Memorandum" states, "Attached find resumes submitted by eleven officers who have applied for consideration to the appointment of Detective. (Burton Aff. Paragraph 4 & Plaintiff's Exhibit 4). It entrusts all lieutenants and sergeants "to review their resumes and (1) rate candidates on the attached personnel performance evaluation guide; (2) Rank in the candidate with an overall rating; (3) Your candidate opinion of the candidates you are evaluating; (4) All candidates will be evaluated." Id. The Defendants criteria for measuring candidates to the position of Detective were subjective and unarticulated.

### C. DEFENDANTS'S STATISTICS

Plaintiff was also able to readily identify that there has not been a single Puerto Rican or Hispanic elevated to the position of Detective since his tenure began in 1982. (Santiago Aff. Paragraph 10). As indicated in paragraph 33 of Defendant's Rule 56.1 Statement, out of five (5) Detectives for the Defendant there is not a single Puerto Rican Detective and only one Hispanic or Latino. Yet, Defendant states that out of sixty (60) police officers working for the defendant, ten (10) are Hispanic/Latino. Id. Additionally, as indicated in Chief Burton's own affidavit it is not unreasonable to conclude that Hispanics and Puerto Ricans were not proportionally represented at the Detective rank. Out of the five (5) detectives, only one (1) is Hispanic, and there are no Puerto Ricans.

### D. PLAINTIFF'S RECENT "EXPERIENCES" AT THE DEPARTMENT

In 2003, Plaintiff was the only officer responsible for obtaining a one thousand dollar ($1,000.00) stipend for officers who speak a second language. (Santiago Aff. Paragraph 8) (Plaintiff Dep. 57:13-24.). While this assisted all Police Officers that spoke

a second language, this benefited Spanish-speaking officers the most. (Santiago Aff. Paragraph 8). Plaintiff facilitated negotiations with his PBA to Chief Burton and Defendant's Village Board. (Santiago Aff. Paragraph 8) (Plaintiff Dep. 58:2-15). Chief Burton was opposed to this stipend. (Santiago Aff. Paragraph 9).

Additionally, on October 23, 2003 an article was written in a Westchester local newspaper concerning a rally and a petition that was circulated in the Ossining community encouraging the Defendant to promote the Plaintiff to Detective. (Plaintiff Dep. 99:12-19) (Santiago Aff. Paragraph 19 & Exhibit A). The article quoted Sundiata Sadiq, President of Ossining NAACP as stating, "I believe Diego (Plaintiff) based on the racist history of the Ossining Police (Defendant) has been passed over because of his race." (Santiago Aff. Paragraph 20 & Exhibit A).

Soon thereafter, on October 28, 2003, the article was posted on the Plaintiff's locker and in the Defendant's hallway and briefing room with the word "Scab" written on it. (Plaintiff Dep. 98:3-7; 99:12-16. (Santiago Aff. Paragraph 21 & Exhibit A). Plaintiff interpreted "Scab" to mean "disease" or "cancer." (Plaintiff Dep. 98:24-25). As such, Plaintiff sent an E-Mail to Chief Burton on October 28, 2003 stating that he felt "violated, disrespected, and humiliated" and requested an investigation. (Santiago Aff. Paragraph 22 & Exhibit B). In fact, after this article was posted Plaintiff felt isolated and alienated by his co-workers and supervisors. (Santiago Aff. Paragraph 25). Plaintiff stated that since the article appeared in the local newspaper, when he called out for a police vehicle, he did not get "back up." (Plaintiff Dep. 119:11-15).

To date, there has been no investigation of this incident. (Santiago Aff. Paragraph 23). To date, Plaintiff does not know who posted the article. (Plaintiff Dep. 100:23-25).

And, significantly Defendant does not maintain an Equal Employment Office (EEO) to report incidents of discrimination. (Santiago Aff. Paragraph 36).

## DEFENDANT'S PRETEXT

The Plaintiff has the "ultimate burden of persuasion" to demonstrate that the challenged employment decision was the result of intentional discrimination. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993). However, the Plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that the were not the only reasons and that the prohibited factor was at least one of the "motivating" factors. Price Waterhouse v. Hopkins, 490 U.S. 228, 247 (1989). Though the ultimate burden may be carried by the presentation of additional evidence showing that "the employer's proffered explanation is unworthy of credence," it may often be carried by reliance on the evidence comprising the prima facie case without more. See Hicks at 2749.

In the present case the defendant has not proffered evidence of a dispositive non-discriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject. See Chambers v. TRM Copy Centers Corp., 43 3d at 38 ("unless employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the fact finder after trial.

Instead, Defendant relies either on a vague and subjective competitive promotion process or non-competitive process – in either case the process discriminated against Plaintiff. This is in the context of an environment where in 2003 Plaintiff singularly fought the Defendant, Chief Burton, and the Village of Ossining for a second language stipend that primarily benefited Spanish-speaking police officers; where in 2003 Plaintiff was subjected to having an article about his enduring racism and discrimination from the Defendant with the word "scab" placed on his locker and in the Defendant's hallways and locker areas; where he told Chief Burton that he felt "humiliated, violated and disrespected"; where there was no investigation despite Plaintiff's requests; where he became alienated and ostracized; where Defendant does not maintain an EEO office to report incidents of discrimination; where Plaintiff had twenty-five years experience, a solid attendance record, and the respect of the Ossining community; and where there has never been a Puerto Rican police officer appointed to Detective and only one Detective out of five is Hispanic.

## CONCLUSION

As the controlling law dictates, it is defendant's burden to prove that no material issues of fact exist that requires trial. Additionally, the plaintiff, as the non-moving party, is to be given the benefit of having all reasonable inferences drawn in his favor.

For the foregoing reasons, defendant's summary judgment motion should be denied and the case permitted to proceed to trial.

Dated: January 8, 2008
      Ossining, NY

                              Respectfully submitted,
                              Law Office of Paul N. Cisternino, P.C.
                              Attorneys for Plaintiff

                          By: _____
                              Mark J. Weinstein (MW1896)
                              16 Briarbrook Road
                              Ossining, NY 10562
                              Tel: (914) 330-1527