LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
     The Village of Ossining Police Department
885 Third Avenue, 16th Floor
New York, NY  10022.4834
212.583.9600

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DIEGO SANTIAGO,                                    Case No. 06 CV 5422 (CLB) (GAY)

                     Plaintiff,

          -against-

THE VILLAGE OF OSSINING POLICE
DEPARTMENT,

                     Defendant.

# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANT'S MOTION FOR
# SUMMARY JUDGMENT

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ..................................................................................................... 3

    A.    Plaintiff Has not Shown Sufficient Evidence to Apply a Mixed Motive
        Analysis.................................................................................................. 3

        1.    Plaintiff Cannot State a *Prima Facie* Case With Respect to the
                Appointment of Officer Stymiloski ............................................ 5

        2.    Plaintiff Cannot demonstrate a *Prima Facie* Case With Respect to
                the Appointment of Officer Farrell ............................................ 8

        3.    Defendant's "Statistics" are Irrelevant....................................... 11

        4.    Plaintiff's "Recent Experiences" Do Not Demonstrate
                Circumstances That Create an Inference of Discrimination .................... 12

    B.    Plaintiff Has Not Demonstrated Sufficient Evidence of the Record to
        Support a Finding of Discrimination on the Basis of Race or National
        Origin .................................................................................................. 15

CONCLUSION.................................................................................................. 19

TABLE OF AUTHORITIES

## Cases

*Abbondanzo v. Health Mgmts. Sys. Inc.*, No. 00 Civ. 4353, 2001 U.S. Dist. LEXIS 17567
(S.D.N.Y. 2001) ................................................................................................................. 5

*Berkowitz v. County of Orange*, 120 F. Supp.2d 386 (S.D.N.Y. 2000) ................................ 5

*Brown v. City of New York*, 869 F. Supp. 158 (S.D.N.Y. 1994) ......................................... 16

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) .................................................. 6

*Burlington Industries Inc. v. Ellerth*, 524 U.S. 742 (1998) ................................................ 17

*Byrnie v. Town of Cromwell Board of Ed.*, 243 F.3d 93 (2d Cir. 2001) ............................ 8, 9, 18

*Crews v. Trustees of Columbia University*, 452 F. Supp. 2d 504 (S.D.N.Y. 2006) ............ 4, 10

*Cruz v. Coach Stores Inc.*, 202 F.2d 560 (2d Cir. 2000) .................................................... 17

*Davis v. State Univ. of N.Y.*, 802 F.2d 638 (2d Cir. 1986) ................................................. 16

*DeMarco v. Holy Cross High Sch.*, 4 F.3d 166 (2d Cir. 1993) ........................................... 15

*Deines v. Tex. Dep't. of Protective & Regulatory Servs.*, 164 F.3d 277 (5th Cir. 1999) ............... 8

*Desert Palace v. Costa*, 539 U.S. 90 (2003) ....................................................................... 4

*Ennis v. Sonitrol Mgmt. Corp.*, No. 02-cv-9070, 2006 U.S. Dist. LEXIS 2599
(S.D.N.Y. Jan. 25, 2006) .................................................................................................... 11

*Ferraro v. Kellwood Company*, 440 F.3d 96 (2d Cir. 2006) .............................................. 4

*Fisher v. Vasser College*, 70 F.3d 1420 (2d Cir. 1995) ..................................................... 11

*Gajjar v. Union College*, No. 00-cv-0718, 2002 U.S. Dist. LEXIS 1475
(N.D.N.Y. Jan. 24, 2002) .................................................................................................... 18

*Gray v. The Robert Plan Corp.*, 991 F. Supp. 94 (E.D.N.Y. 1998) .................................... 11, 12

*Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir. 1984) ...................................................... 11

*Holt v. KMI-Continental, Inc.*, 95 F.3d 123 (2d Cir. 1996) ............................................... 6, 18

*Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980) ................................................................. 9

*Lloyd v. WABC-TV*, 879 F. Supp. 394 (S.D.N.Y. 1995) ..................................................... 10, 16

*Logan v. New York State Human Rights Appeal Bd.*, 448 N.Y.S.2d 259 (3d Dep't. 1982) .......... 16

*Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357
(11th Cir. 1999) ................................................................................................................... 4

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003) ............................................... 3

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................... 3, 5, 6

*Mincey v. Univ. of Rochester*, ___ F.3d ____, 2008 U.S. App. LEXIS 1249
No. 06-5227-cv (2d Cir. Jan. 23, 2008) ............................................................. 15, 17

*Orisek v. American Inst. Aeronautics and Astronautics*, 938 F. Supp. 185,
*aff'd* 162 F.3d 1148 (2d Cir. 1998) ....................................................................... 10

*Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575 (S.D.N.Y.2007) ................................ 17

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) ................................................. 4

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ..................................................... 5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) .............. 4, 5, 15, 17

*Schachner v. Beth Israel Medical Ctr.*, No. 96 Civ. 7811, 1998 U.S. Dist. LEXIS 11544
(S.D.N.Y. Jul. 28, 1998) ...................................................................................... 10

*Stern v. Trustees of Columbia University*, 131 F.3d 305 (2d Cir. 1997) ................... 10

*Thornley v. Penton Publ'g., Inc.*, 104 F.3d 26 (2d Cir. 1997) .................................. 10

*Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111 (2d Cir. 2007) ................. 15

**Statutes**

42 U.S.C. § 1981 ..................................................................................................... 1, 4, 18
42 U.S.C. § 2000(e)-2(m) ........................................................................................ 4
Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended ("Title VII") ...... 4, 18
New York State Human Rights Law ("NYSHRL") ................................................... 1, 18

## PRELIMINARY STATEMENT

Plaintiff's opposition to summary judgment concedes that his claims of discriminatory failure to promote in 2001 and 2002 are time-barred, and that his claim for retaliation is legally insufficient.  (Pl. Brf. p. 1)  Plaintiff's sole remaining claim is that Defendant, the Village of Ossining Police Department ("the Department"), denied him appointments to the rank of Detective in 2004 on the basis of his race and national origin in violation of 42 U.S.C. § 1981 and the New York State Human Rights Law.  He insufficiently supports his theory by insisting that his qualifications, based upon his own *self-selected* criteria— his "Spanish-speaking abilities, his seniority with the Department, his 'knowledge of the streets' and the Hispanic or Latino community, and the respect he feels he receives from the community (Plaintiff's Dep. at 110:23–111:7), and "past experience in working with detectives, undercover work, working in other jurisdictions and questioning suspects" (Pl. Brf. p. 6)—made him, in his opinion, the clear choice for the Detective appointments.

Plaintiff's argument fails with respect to the non-competitive appointment of Officer Stymiloski, because Officer Stymiloski's credentials as a Traffic Specialist were admittedly superior to Plaintiff's.  Plaintiff attempts to overcome this reality by stating that he "was never afforded the opportunity to attend the specialized traffic management and accident investigation classes and schools that Patrol Officer Stymiloski was given."  (Pl. Brf. pp. 5-6).  Plaintiff does not claim that discriminatory animus deprived him of training opportunities that were available to other officers.  He does not claim that he ever requested or was denied such training opportunities, or ever expressed interest in traffic management work.  Consequently, Plaintiff's explanation misses the point and in fact, supports the Department's position that Plaintiff was not considered for the appointment Stymiloski received, because neither his

qualifications, nor those of any other member of the Department, even approached Officer Stymiloski's in the area of traffic enforcement.

With respect to the competitive promotion of Officer Farrell, Plaintiff ignores the fact that the Department applied legitimate, non-discriminatory criteria to evaluate the candidates for the Detective position. Therefore, Plaintiff attempts to discredit the Department's criteria as "subjective and unarticulated." This argument is also unavailing, as the criteria applied by Defendant was anything but unarticulated, and employers are permitted to rely on subjective criteria in making employment decisions, as long as they are not discriminatory. Moreover, case law demonstrates that when one candidate's credentials are not objectively superior to another's, it is not the place of the Court to substitute its judgment of qualified candidates' relative qualifications for the employer's.

Finally, Plaintiff cites as evidence allegedly creating an inference of discrimination his support for a second language stipend and the Chief of Police's alleged opposition to such a stipend, the October 2003 posting of an article on his locker with the word "scab" written on it, and his false assumption that no investigation of the posting was conducted, as well as an unspecified incident in which he claims he called for "back up" and did not receive it. None of these allegations relate to Plaintiff's race or national origin, are in any way related to the 2004 Detective appointments, or raise an inference of discrimination.

## ARGUMENT

Because plaintiff concedes his retaliation claims and that his failure to promote claims prior to 2004 are time-barred, the only remaining issue is Plaintiff's claim that the Department discriminated against him because of his race and/or national origin when it appointed Officers Stymiloski and Officer Farrell to Detective in 2004, rather than appointing Plaintiff. Plaintiff's opposition fails to establish a *prima facie* case of failure to promote on the basis of race or national origin, and even if it did, it cannot demonstrate that the legitimate, non-discriminatory reasons the Department has articulated for its decision to promote officers other than Plaintiff are a pretext for unlawful discrimination

### A.    Plaintiff Has not Shown Sufficient Evidence to Apply a Mixed Motive Analysis

To state a *prima facie* case of discrimination, Plaintiff must demonstrate that: (1) he was within the protected groups, (2) he applied for the position for which he was qualified, (3) he was rejected for the position or subjected to an adverse employment action, and (4) the circumstances give rise to an inference that there was a discriminatory motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). If that *prima facie* case is established, the burden of production, but not persuasion, shifts to the employer to set forth a legitimate non-discriminatory reason for the complained of action. Once the employer has met its burden of articulating a legitimate, non-discriminatory reason for the employment action, the employee must then show evidence, such as the falsity of the employer's stated reason, demonstrating that the reason advanced is pretextual—*i.e.*, that it masks the employer's true discriminatory reason for its actions. *Ferraro*

*v. Kellwood Company*, 440 F.3d 96, 100 (2d Cir. 2006) (citing *Reeves* v. *Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 (2000)).

Plaintiff correctly states that the "ultimate burden of persuasion" to prove his discrimination claim remains with him.  However, citing *Price Waterhouse v. Hopkins*, he then attempts to obviate his burden by applying a "mixed motive analysis," and asserts that he need not "show that the employer's proffered reasons [for its employment decision] were false or played no role in the employment decision, but only that [they] were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.  490 U.S. 228, 247 (1989)." Plaintiff's invocation of a mixed motive analysis under *Price Waterhouse[1]* is misplaced.  Mixed motive cases place a *greater* burden upon a plaintiff to establish a *prima facie* case.  To establish a *prima facie* under a mixed motive analysis, Plaintiff must submit evidence that race or national origin played a substantial role in the employer's decision.  *Crews v. Trustees of Columbia University*, 452 F. Supp. 2d 504, 521 (S.D.N.Y. 2006) (citing *Price Waterhouse,* 490 U.S. 228 at 258); 42 U.S.C. § 2000e-2(m)) (additional citations omitted).  If the plaintiff can provide this evidence, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision for a permissible reason. *Id.* (citing *Desert Palace Inc.*, 539 U.S. at 93) (additional citations omitted).  Because Plaintiff's burden of establishing a *prima facie* case is greater under a mixed motive approach, if Plaintiff fails to produce evidence creating an inference of discrimination, a mixed motive approach is of no assistance to the Plaintiff. *Id.* (citing *Abbondanzo v. Health Mgmts. Sys. Inc.* No. 00 Civ. 4353, 2001 U.S. Dist.

---

[1] *Price Waterhouse* was abrogated by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e)-2(m).  *Desert Palace v. Costa*, 539 U.S. 90, 97-98 (2003).  However, some Courts have held that the Civil Rights Act of 1981 does not apply to claims asserted under 42 U.S.C. § 1981.  *Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357 (11th Cir. 1999) (Mixed motive amendments to Title VII do not apply to § 1981 claims).  The distinction is without effect here, where plaintiff does not present any evidence, direct or circumstantial, demonstrating that unlawful discrimination played a substantial part in the decision at issue.

Lexis 17567, *18-20 (S.D.N.Y. 2001) (citing differences between single motive an mixed-motive cases).

If Plaintiff fails on a traditional *McDonnell Douglas* analysis, he necessarily fails under a mixed motive analysis as well. *Id.*, 452 F.Supp.2d at 521-522 (citing *Berkowitz v. County of Orange*, 120 F.Supp.2d 386, 400 (S.D.N.Y. 2000)). "In short, to warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 60-61 (2d Cir. 1997). Regardless of whether a mixed motive or single motive analysis is applied, "[t]he question for the court on summary judgment remains the same—whether the Plaintiff's evidence, taken as a whole, establishes a substantial evidence that the employer intentionally discriminated against the plaintiff. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

Here, Plaintiff articulates no evidence meeting a heightened mixed motive analysis. Rather, he simply concludes that a mixed motive analysis should apply. However, as set forth in Defendant's moving papers, Plaintiff cannot state even a *prima facie* case of discrimination under a "single motive" *McDonnell-Douglas* analysis. As set forth below, his opposition fails to present any evidence, direct or circumstantial, demonstrating that his race or national origin played any factor in the decision to select others for appointment to Detective. Accordingly, summary judgment should be granted under either analysis.

### 1.     Plaintiff Cannot State a *Prima Facie* Case With Respect to the Appointment of Officer Stymiloski

With respect to the appointment of Officer Stymiloski in August 2004, Plaintiff cannot fulfill the second prong of the *prima facie* analysis, *i.e.*, "that he applied for the position for which he was qualified," because this appointment was non-competitive, there was no

vacancy, and no applications were solicited.    Applications were not solicited for that appointment because Officer Stymiloski had been performing the duties of Traffic Specialist prior to becoming a Detective, and was appointed to a uniformed Detective position to perform duties within the zone of his existing expertise and specialized training in traffic enforcement. (Burton Aff. ¶¶ 9–10; Plaintiff Dep. at 79:19–80:6; 80:21–81:6.)    *See also Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (holding that plaintiff could not make out a *prima facie* case for discriminatory failure to promote her to a particular position when the defendant employer did not seek applicants to fill that position) (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff contends that he should be excepted from the "specific application requirement" in this instance because the facts in this instance make this requirement "quixotic," and thus, he must show only that "(1) the vacancy at issue was not posted before it was filled, and (2) the employee either had no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." (Pl. Brf. p. 4, citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).    This argument is unavailing because, unlike plainclothes Detective positions, Stymiloski's appointment to a uniformed Detective position was a non-competitive appointment that was not the result of a *vacancy*.    Therefore, the first element of this exception cannot be met.    Stymiloski was simply appointed to Detective within his current Traffic Specialist duties.    (Burton Aff. ¶¶ 9–10).

However, even if the specific application requirement were to be met or excepted, Plaintiff is still unable to establish the second prong of a *prima facie* case, because, by his own admission, he was not qualified for the position.    Plaintiff admits that he does not have the training that Stymiloski has, nor was he even aware of, and does not dispute in his opposition,

the many certifications that Stymiloski has in traffic enforcement that qualified him for this specific position. (Burton Aff. ¶¶ 9–10; Plaintiff Dep. at 76:17–79:18; Plaintiff's Rule 56.1 Statement in Opposition, ¶10).

Rather than attempt to show that he was actually qualified to perform Officer Stymiloski's job, Plaintiff claims that he "was never afforded the opportunity to attend the specialized traffic management and accident investigation classes and schools that Patrol Officer Stymiloski was given." (Pl. Brf. pp. 5-6). However, Plaintiff does not allege that he ever requested and was denied traffic management opportunities. Indeed, he never, during Chief Burton's tenure, expressed a desire to engage in traffic management work or training. (Reply Burton Aff. ¶ 2).[2]   Plaintiff's assertion that he was never afforded the opportunity to attend the specialized courses that Stymiloski attended is therefore irrelevant.

Second, Plaintiff cannot meet the fourth prong of a *prima facie* case, because he cannot show that the failure to select him instead of Officer Stymiloski for appointment to the uniformed Detective position occurred under circumstances creating an inference of discrimination. As discussed above, Officer Stymiloski was appointed to a uniformed Detective position based on his personal technical expertise and qualifications, which were unique in the Department. Plaintiff admittedly did not have this expertise or these qualifications. (Burton Aff. ¶¶ 9–10; Plaintiff Dep. at 76:17–79:18). Moreover, the qualifications Plaintiff claims in his Affidavit render him more qualified than Officer Stymiloski, specifically, "his past experience as an undercover police officer, being used in surrounding communities to investigate crimes; and based on my collaboration with Defendant's detective division in criminal investigations" (Santiago Aff., ¶ 30), are irrelevant to the traffic management duties performed by Stymiloski as

---

[2] "Reply. Burton Aff." refers to the Supplemental Affidavit of Chief of Police Joseph Burton, Jr., dated January 31, 2008.

a Detective. An objective comparison of Officer Stymiloski's and Plaintiff's credentials reveals that Officer Stymiloski's traffic enforcement credentials are so superior to Plaintiff's that "no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the Plaintiff for the job in question." *Byrnie v. Town of Cromwell Board of Ed.*, 243 F.3d 93, 103 (2d Cir. 2001) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

Plaintiff cannot demonstrate that his race o national origin played any role in this appointment.

### 2.    Plaintiff Cannot demonstrate a *Prima Facie* Case With Respect to the Appointment of Officer Farrell

Plaintiff also cannot meet the fourth prong of a *prima facie* case with respect to Officer Farrell's promotion because he cannot show that the Department's failure to select him instead of Officer Farrell occurred under circumstances creating an inference of discrimination. In the case of the plainclothes Detective promotion in 2004, which Officer Farrell received, the process that was used to evaluate the applicants for the position was a non-discriminatory procedure applying legitimate job-related criteria. These criteria include supervisory skills, community interaction, handling assignments, victim and prisoner interaction, processing arrests, report writing, comprehension of police procedures, knowledge of laws and ordinances, police ethics and integrity, comprehension and communication skills, reasoning ability, general attitude, problem recognition, judgment, innovativeness, adaptability, leadership skills, interpersonal skills, physical fitness, and attendance. (Burton Aff., Ex. B). The Sergeants and Lieutenants evaluated these job related performance and behavioral criteria for each candidate. (Burton Aff. at ¶ 4). Ability to speak Spanish and seniority were not among the criteria evaluated. (*Id.* at ¶ 4, Exh. B). Plaintiff's superiors determined that he was not the most qualified candidate for the

position among the several candidates who applied, ranking him in the bottom half of all such candidates. (*Id.* at ¶ 12).

Plaintiff claims that this procedure ultimately discriminated against him because it relied on "wholly subjective and unarticulated standards." (Pl. Brf. p. 6). This argument is untenable because the standards are articulated in detail on the evaluation forms. (Burton Aff. Ex. B). While certain criteria like "general attitude" may be subjective, others like "knowledge of laws and ordinances," "comprehension of police procedures," and "attendance" are objectively measurable. Consequently, the Department's evaluation process is not unlawful because its explanation for its failure to select Plaintiff for the promotion—that, considering the criteria on which the candidates were evaluated, he failed to rank among even the top half of the candidates evaluated by the Sergeants and Lieutenants—"is reasonably attributable to an honest even though partially subjective evaluation of qualifications[; therefore,] no inference of discrimination can be drawn." *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980), *quoted in Byrnie*, 243 F.3d at 105. Interestingly, the criteria Plaintiff's opposition asks the Court to substitute for those the Department actually used are also a mix of objective, such as "Spanish speaking abilities" and "seniority" and subjective criteria, like his alleged "knowledge of the streets" and "respect from the community." (*See* Plaintiff's Dep. at 110:23–111:7).

Plaintiff's own opinion of what the criteria for the Detective position should be is irrelevant. He does not have the prerogative to substitute his self-serving criteria for those the employer used. He essentially just disagrees with the Department's business decision, and would have this Court decide that that decision was imprudent. This is not the function of the Courts. *Byrnie,* 243 F.3d at 104 ("[T]he court must respect the employer's unfettered discretion to choose among qualified candidates")(quoting authority omitted), *Stern v. Trustees of*

*Columbia University*, 131 F.3d 305, 315 (2d Cir. 1997) (courts should not act as super-personnel departments, reexamining entities business decisions); *Crews*, 452 F.Supp.2d 504, 526 ("Although Crews may disagree with Columbia's determination that Griffin was more qualified than he, courts are not permitted to second-guess the reasonableness of the employer's criteria or the merits of its selection for the position . . .Whether Crews was qualified for the job must be judged by Columbia's standards, not his own.") (citing *Orisek v. American Inst. Aeronautics and Astronautics*, 938 F. Supp. 185, 192, *aff'd* 162 F.3d 1148 (2d Cir. 1998); *Thornley v. Penton Publ'g., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)).  Moreover, Plaintiff failed to depose any of the decision makers, thus foregoing the opportunity to question them regarding the criteria they used to evaluate the Detective Division candidates. (Fuchs Decl. ¶ 7).

Here, not only is the Department's explanation of its partially subjective evaluation clear and specific, but no inference of discrimination can reasonably be drawn, when the same decision maker, Chief Burton, who chose Officer Farrell in 2004, also chose to promote Jose Ferrao, a Hispanic or Latino officer, to the Detective Division in June 2002, using this same procedure.  Moreover, Chief Burton promoted Officer George Byrne, a Hispanic or Latino Officer, to the rank of Sergeant using a similar evaluation process in 2005.  Consequently, no inference of discrimination can reasonably be drawn. *See, e.g.*, *Schachner v. Beth Israel Medical Ctr.*, No. 96 Civ. 7811, 1998 U.S. Dist. LEXIS 11544 (S.D.N.Y. Jul. 28, 1998) (finding no inference of discrimination where a person within plaintiff's same protected category was hired in plaintiff's stead); *see also Lloyd v. WABC-TV*, 879 F. Supp. 394, 402 (S.D.N.Y. 1995) (finding employer's explanation that other candidates were more qualified than plaintiff for the promotion to be legitimate, non-discriminatory reason).

### 3.    Defendant's "Statistics" are Irrelevant.

Plaintiff attacks the Department's reference to Detective Ferrao and Sergeant Byrne in an attempt to show that the Department has not adequately represented its Hispanic or Latino population in its Detective ranks.   He claims that it is "not unreasonable to conclude that Hispanics and Puerto Ricans [are] not proportionally represented at the Detective rank" when only one, Jose Ferrao, out of five is Hispanic or Latino and none are Puerto Rican.   This argument holds no water, as courts have held that, although a disparate treatment plaintiff may establish a pattern or practice of adverse employment action against members of his protected category from which an inference of discrimination may be drawn, "the sample size must be large enough to permit an inference that [the protected category status] was a determinative factor in the employer's decision." *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir. 1984); *accord, Fisher v. Vasser Colleg*e, 70 F.3d 1420, 1450-51 (2d Cir. 1995).   Thus, "courts have consistently rejected . . . statistical samples too small to be meaningful."   *Haskell*, 743 F.2d at 121 (collecting cases), *Fisher*, 70 F.3d at 1451 (same); *Ennis v. Sonitrol Mgmt. Corp.*, No. 02-CV-9070, 2006 U.S. Dist. LEXIS 2599, *14 (S.D.N.Y. Jan. 25, 2006); *Gray v. The Robert Plan Corp.*, 991 F. Supp. 94, 104 (E.D.N.Y. 1998) (noting that "statistical significance becomes harder to attain as the sample size shrinks") (citation omitted).

Here, the sample size—five Detectives—is far too small to be meaningful.   *See, e.g., Haskell*, 743 F.2d at 121 (rejecting sample size of ten (10) terminations over an eleven year period as illustrative of age discrimination) (collecting cases where sample size ranged from eight to fifteen); *Gray*, 991 F. Supp. at 104 (rejecting sample size of thirteen (13) employees to

demonstrate age discrimination). Therefore, the presence of one Hispanic or Latino Detective,[3] and the absence of any Puerto Rican Detectives cannot be used raise an inference that the Department has a pattern or practice of discriminating against Hispanics or Latinos or Puerto Ricans. *Id.* Rather, the probative evidence is that the same decision-maker who appointed Officer Farrell in 2004 also appointed a Hispanic or Latino Detective in 2002, and appointed a Hispanic or Latino to the more prestigious rank of Sergeant in 2005.

**4.    Plaintiff's "Recent Experiences" Do Not Demonstrate Circumstances That Create an Inference of Discrimination**

Plaintiff raises certain additional issues in a last-ditch attempt to demonstrate "circumstances that create an inference of discrimination" with respect to his claim that the Department failed to promote him on the basis of his race and national origin. These issues are not only entirely unrelated to the 2004 Detective appointments, but Plaintiff omits background information that gives these "experiences" the context necessary to show that they are unrelated to discriminatory animus.

First, Plaintiff states that he "facilitated negotiations" between his labor union, the Police Benevolent Association ("PBA"), and the Village Board regarding the foreign language stipend, which would primarily benefit Spanish-speaking officers like him. Plaintiff claims that Chief Burton was opposed to this stipend, and thus suggests that because Chief Burton was allegedly against a stipend that benefited primarily Spanish-speaking officers, he is biased against Hispanics or Latinos. There are two reasons why this argument is unavailing. First, as a preliminary matter, Plaintiff has no knowledge or evidence regarding Chief Burton's position on this issue. In fact, because Plaintiff negotiated this matter directly with the Village Board and the

---

[3] Even if the sample were not too small, Plaintiff does not even attempt demonstrate the proportion of Hispanics and Latinos in the relevant applicant pool. The Court is left to wonder whether or not Hispanics or Latinos may not be over-represented among the Department's Detectives.

Mayor, Chief Burton gave no input on the issue, and never had the opportunity to state an opinion in connection with the language stipend. Plaintiff only speculates that he was opposed to it. (Burton Reply Aff. ¶ 4.) More importantly, the stipend is in relation to a language skill, a characteristic not intrinsically tied to race or national origin, and at least two non-Spanish speaking officers who speak second languages such as Korean, Polish, and Russian also receive the stipend. (*Id.*) Consequently, Plaintiff's allegation, even if true, is too tenuous to show discriminatory animus by Chief Burton towards Hispanics or Latinos.

The second "experience" raised by Plaintiff is the posting of a newspaper article discussing a community rally to appoint Plaintiff to the position of Detective in the Department with the word "scab" written on it in October 2003. (Weinstein Decl. Ex. A). Plaintiff argues that the posting of this article evidences the Department's discriminatory animus toward Hispanics or Latinos and/ or Puerto Ricans. Plaintiff's argument makes no sense. First, Plaintiff admits that he had never heard the term "scab" used as a derogatory term for Hispanics or Puerto Ricans, but instead interpreted the term as meaning "like a disease or cancer to the rest of the Police Department." (Plaintiff Dep. 98:22–99:5.) Second, Plaintiff failed to impute the word "scab" with its more commonplace meaning as a labor relations term, indicating that Plaintiff allegedly negotiated behind the back of his labor union. Indeed, Plaintiff explained that he "facilitated negotiations" between the PBA and Village Board regarding the language stipend. (Pl. Brf.. p. 8). Plaintiff apparently circumvented the PBA and directly went to the Board with his stipend proposal. (Burton Reply Aff. ¶ 4.) Thus, the posting of the "scab" article is unrelated to Plaintiff's race or national origin, and there is no basis for inferring that it shows discriminatory animus on the basis of race or national origin with respect to the Detective selection process in 2004.

Additionally, Plaintiff's speculation that the Department failed to investigate this incident is false. The Department viewed this posting as a serious offense, and did in fact thoroughly investigate the matter. (Burton Reply Aff. ¶¶ 6-8, Ex. A-C).[4] Despite its best investigatory efforts, the Department has not been able to identify the responsible individual or individuals. (Burton Reply Aff. ¶ 7). Accordingly, Chief Burton was unable to report to Complainant who posted the article. The Department's handling of this incident cannot create any inference of discriminatory animus on the basis of race or national origin.

Finally, Plaintiff claims that "since the article appeared in the local newspaper, when he called out for a police vehicle, he did not get 'back up.'" Plaintiff never reported that he placed one or more calls for "back-up" which were not responded to. (Burton Reply Aff. ¶ 10.) In his deposition, he was unable to recall when this allegedly took place, or give any examples of such occasions. Additionally, he admitted that he did not know whether such alleged failures to provide backup were the result of the article being published. (Plaintiff Dep. 119:8 – 121:10).[5] If anything, his testimony reveals that he felt that such an event was an act of retaliation. (*Id.*) However, Plaintiff concedes his retaliation claim. (Pl. Brf. p. 1). He makes no connection between this unspecified event and the Detective selection process.

Plaintiff recounts these "recent experiences" in an attempt to show that the Department was hostile or had discriminatory animus toward Hispanics or Latinos. However, when viewed in context, it is clear that none of these "experiences" were motivated by discriminatory animus against Hispanics or Latinos or Puerto Ricans, or have any connection to the Detective selection process.

---

[4] Plaintiff's discovery requests did not seek disclosure of any documents relating to the Department's investigation or response relating to the posting of the article. Nor did Plaintiff depose any witnesses regarding this issue. Fuchs Reply Decl. ¶ 2).

[5] This excerpt is annexed to the Fuchs Reply Declaration as Exhibit A.

Based on these facts, Plaintiff cannot establish a *prima facie* case of discrimination for failure to appoint him to the position of Detective on the basis of his race or national origin.

**B.    Plaintiff Has Not Demonstrated Sufficient Evidence of the Record to Support a Finding of Discrimination on the Basis of Race or National Origin**

The ultimate question at issue in this motion is whether the evidence on the record, when viewed in the light most favorable to the Plaintiff, is sufficient to sustain a finding by a reasonable fact-finder that the adverse decision at issue was motivated by unlawful discrimination. *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (citing *Reeves*, 350 U.S. 133, 142–43). It is not.

Even if Plaintiff could carry his burden of establishing a *prima facie* case of failure to promote based upon race or national origin, which he cannot, he has failed to produce sufficient evidence to demonstrate that the Department's proffered legitimate, non-discriminatory business reasons for appointing other officers to the Detective Division instead of Plaintiff are a pretext for discrimination on the basis of race and/or national origin. "In determining whether an employer's explanation for an adverse employment action is pretext, 'the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *Mincey v. Univ. of Rochester*, ___ F.3d ___, 2008 U.S. App. Lexis 1249, *5, No. 06-5227-cv (2d Cir. Jan. 23, 2008) (quoting *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d Cir. 1993)).

As set forth above and in Defendant's moving papers, Plaintiff was not selected for the uniformed Detective position in August 2004 because he was admittedly unqualified to perform Officer Stymiloski's traffic management duties, and he was not selected for the plainclothes Detective position in September 2004 because his superiors evaluated his

performance in twenty-five legitimate, articulated, clear and specific, and partially subjective, job-related areas, and ranked him in the lower half among the applicants.  Moreover, Plaintiff did not receive recommendation of the Lieutenant supervising Detectives Sergeant Sullivan.  (Burton Aff. ¶¶ 3-5, 12).  The fact that his superiors judged Officer Farrell (and others) as more qualified for the Detective position than Plaintiff is a legitimate, non-discriminatory business reason for the Department's decision.  *See Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986) ("The employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."); *see also Lloyd*, 879 F. Supp. at 402 (S.D.N.Y. 1995) (finding employer's explanation that other candidates were more qualified than plaintiff for the promotion to be legitimate, non-discriminatory reason); *Brown v. City of New York*, 869 F. Supp. 158, 173 (S.D.N.Y. 1994) (same); *Logan v. New York State Human Rights Appeal Bd.*, 448 N.Y.S.2d 259, 260 (3d Dep't. 1982) (same).

Plaintiff claims that pretext is demonstrated by an "environment" where he singularly advocated the language stipend, had an article with the word "scab" placed on his locker, allegedly with no resulting investigation despite his requests, where he felt alienated and ostracized, and where Defendant does not maintain an Equal Employment Opportunity ("EEO") office.  As set forth above, each of these items is unrelated to either his race and national origin or the Detective selection process, and his speculation that the posting of the article was not investigated is incorrect. (*See* point A.4, *infra*).  His contention that the Department does not maintain an EEO Office is irrelevant to his disparate treatment claim.  Plaintiff does not attempt to articulate a claim for hostile work environment on the basis of national origin, either in his Complaint or in his opposition papers.  Defendant is not seeking to apply an affirmative defense

16

that Plaintiff failed to avail himself of available complaint procedures.[6] Regardless, Plaintiff was clearly not impeded from reporting any incidents or behavior which he felt to be inappropriate or harassing—he went directly to Chief Burton to report and complain about the posting of the "scab" article in October 2003 (Fuchs Decl., Exh. 5; Burton Reply Aff. ¶ 6, Ex. A).

Here, Plaintiff has offered no evidence, but rather only conclusory allegations and speculation, to demonstrate that these reasons are not the actual reasons for the Department's decision, and that the adverse employment decision at issue was motivated at least in part by discriminatory animus. Accordingly, he has not fulfilled his ultimate burden of persuasion. *See, e.g.*, *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 146-47 (2000) (The ultimate question is whether the employer intentionally discriminated . . . [I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination) (citations and internal quotations omitted) (emphasis in the original); *Mincey*, ___ F.3d at ___, 2008 U.S. App. Lexis 1249, *6-7, No. 06-5227-cv (2d Cir. Jan. 23, 2008) (conclusory allegations failed to create a genuine issue of material fact as to pretext).

No rational trier of fact could find that the Department discriminated against Plaintiff because he is a Hispanic or Latino of Puerto Rican national origin when the Chief of Police chose to appoint officers other than Plaintiff and over all other applicants based upon legitimate, job-related criteria and the recommendation of their superiors for the Detective position when Plaintiff can produce no evidence to demonstrate that he was the more qualified

---

[6] *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Even if Plaintiff had alleged a hostile work environment claim, the facts as alleged do not even remotely state such a claim. *See e.g. Cruz v. Coach Stores Inc.* 202 F.2d 560, 570 (2d Cir. 2000) (to defeat a summary judgment motion on a claim of racially hostile work environment, "a plaintiff must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule and insult, that was sufficiently severe or pervasive to alter the terms or conditions of the victim's employment") (internal quotation marks omitted). The three allegations cited above do not approach this standard. Moreover, plaintiff must make a sufficiently objective showing that such conduct was based upon his race or national origin. *Pearson v. Bd. of Educ.* 499 F. Supp. 2d 575, 593 (S.D.N.Y. 2007) (evidence did not support plaintiffs' subjective feelings that conduct was based upon their race, where their only evidence was that they were African-American). Plaintiff would not be able to make such a showing.

17

for the appointments received by Officers Stymiloski and Farrell. Plaintiff failed to present any documentary evidence in this regard, or to depose the decision makers. He relies entirely upon speculation and his own, subjective and unsupported opinion of his performance. Neither, of course, are evidence of discrimination. *See, e.g., Holt*, 95 F.3d at 123 (granting summary judgment on plaintiff's Title VII "failure to promote" claim because plaintiff's opinion that she was more qualified than those selected for the position did not demonstrate that defendant's proffered legitimate, non-discriminatory reason for doing so was pretext); *Gajjar v. Union College*, No. 00-CV-0718, 2002 U.S. Dist. LEXIS 1475, *20–*21 (N.D.N.Y. Jan. 24, 2002) (granting summary judgment for defendant on plaintiff's failure to promote claim, finding plaintiff's "wholly conclusory allegation" that defendant's decision not to promote him "might have been because of race" to be insufficient to create an inference of discriminatory motive).

Plaintiff cannot defeat summary judgment by asking the Court to agree with his self-serving belief that the Village of Ossining should have a Spanish-speaking Detective who is familiar with its Hispanic or Latino community, or to apply Plaintiff's criteria to the non-discriminatory process the Department used to evaluate candidates for the Detective promotion. Instead, he must produce evidence supporting a finding that the Department's proffered reasons are false, or that the Department's decisions were motivated by animus towards his Hispanic or Latino race and/or Puerto Rican national origin. He cannot do so. In the absence of such evidence, "the Court must respect the employer's unfettered discretion to choose among qualified candidates." *Byrnie*, 243 F.3d at 104 (quoting authorities omitted). Consequently, summary judgment for the Department, dismissing Plaintiff's discrimination claims under § 1981 and the NYHRL, should be granted.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendant's moving brief, Defendant respectfully requests that summary judgment be granted in its favor dismissing the Complaint in its entirety, and that the Court grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        February 4, 2008

                                        /s/
                                        _____

                                        Stephen A. Fuchs (SF-5407)
                                        LITTLER MENDELSON, P.C.
                                        885 Third Avenue, 16th Floor
                                        New York, New York 10022
                                        (212) 583-9600

                                        Attorneys for Defendant
                                        Village of Ossining Police Department