UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Diego Santiago,

        Plaintiff,

-against-

The Village of Ossining Police Department,

        Defendant.

---

Index No. 06 CV 5422 (CLB) (GAY)

**REPLY AFFIDAVIT OF JOSEPH BURTON, JR.**

STATE OF NEW YORK    )
                              ) ss:
COUNTY OF WESTCHESTER )

JOSEPH BURTON, JR., being duly sworn, deposes and says:

1. I am the Chief of Police of the Village of Ossining Police Department ("the Department"). I have held this position during all times relevant to this action. I make this affidavit in further support of Defendants' Motion for Summary Judgment seeking dismissal of the complaint with prejudice. The statements set forth below are made from my personal knowledge as Chief of Police during all relevant times.

2. Officer Diego Santiago's allegation that he was "never afforded the opportunity to attend the specialized traffic management and accident investigation classes and schools that Patrol Officer Stymiloski was given" is false. During my tenure as Chief of Police, since 1991, Officer Santiago never requested to my knowledge such training opportunities, nor expressed any interest in developing expertise in the area of traffic enforcement.

3. Moreover, the experience Officer Santiago claims render him more qualified than Officer, Stymiloski, specifically, "his past experience as an undercover police officer, being used in surrounding communities to investigate crimes; and based on my collaboration with

Defendant's detective division in criminal investigations" (Santiago Aff. ¶ 30) is irrelevant to Officer Stymiloski's duties and responsibilities. Officer Stymiloski was appointed to the position of Detective as a uniformed Detective, not a plainclothes Detective, with no change in the Traffic Specialist duties he was performing. Neither Officer Santiago nor any other member of the Department had the qualifications or experience in traffic management to do Detective Stymiloski's job.

4. Officer Santiago receives a stipend of $1000 per year from the Department as additional compensation for application of his bilingual abilities. In 2003, Officer Santiago suggested that the Department institute such a stipend to compensate officers whose bilingual abilities are occasionally used as a resource by the Department. However, Officer Santiago may have directly lobbied the Village of Ossining Board of Trustees and the Mayor of the Village of Ossining to grant this language stipend. Because he negotiated directly with the Village, I had no opportunity to provide input regarding the stipend. Thus, contrary to Officer Santiago's allegations, I was never asked about this stipend. I was never opposed to the adoption of this stipend, nor was I given any opportunity to express any opinion in opposition to the granting of this stipend.

5. The stipend not only benefits Spanish-speaking officers. In addition to Officer Santiago, only two of the five officers who also receive stipends for their bilingual abilities receive it for Spanish fluency. Two of the other officers receiving stipends receive it for their application of language skills in Korean and Polish, Russian and Byelorussian.

6. On October 28, 2003, Officer Santiago sent me an email informing me that someone had posted a newspaper article on his locker with the word "scab" written on it, and expressing his displeasure with the posting. A true and accurate copy of Officer Santiago's

2

email is attached hereto as Exhibit A. When I saw the article, I understood the word "scab" to be a common labor relations term, and to indicate that someone felt Officer Santiago was a "scab" because he may have bypassed his labor union, the Police Benevolent Association ("PBA") to negotiate or attempt to negotiate directly with the Mayor and the Village Board of Trustees. Officer Santiago did not indicate to me, in his email or otherwise, that he felt this incident was a slur upon his national origin, and the Department had no reason to interpret it in such a fashion. Nevertheless, the Department viewed the posting of the article as a serious matter, and consequently, immediately began an investigation to determine who was responsible for posting the article. I directed two Lieutenants, John Quartucio and Michael McElroy, to spearhead this investigation and report their results to me by November 3, 2003. A copy of my instructions regarding the investigation, dated October 31, 2003, are attached hereto as Exhibit B.

7. In the course of their investigation, Lieutenants Quartucio and McElroy interviewed every individual who was in the Police Department building at the time when the article was posted. When they reported to me that the interviews had not revealed who had posted the article, and their investigation was therefore inconclusive, I ordered that they re-interview everyone and expand their investigation. Despite our best efforts, the investigation did not result in identification of the person(s) responsible for the posting of the article. A copy of my November 5, 2003 email to Lieutenants Quartucio and McElroy, ordering the continuation and expansion of their investigation, is attached hereto as Exhibit C.

8. Because the Department's thorough investigation failed to identify the individuals responsible for posting the article, I was unfortunately unable to reveal the person or persons responsible to Officer Santiago. Nevertheless, the investigation apparently deterred any further such incidents, as I have received no report of any further such postings or similar incidents.

3

9. Officer Santiago did not hesitate to complain directly to me regarding any treatment he felt was unfair. *See* Exhibit A. He never complained to me that he felt he was being treated unfairly on the basis of his race or national origin. Moreover, if he was not satisfied with the response he received from the Department to any complaint, he could also have filed a grievance with his union pursuant to the grievance and arbitration procedure in the collective bargaining agreement between the Department and the PBA.

10. To the best of my knowledge, Officer Santiago never reported that he placed one or more calls for "back-up" which were not responded to. The normal course of protocol would be to report such an incident, so that it could be investigated. As far as I am aware, Officer Santiago never filed such a report. At his deposition in this case, which I attended, when Officer Santiago was asked to give examples of when he was not given back-up, he was unable to do so, and was also unable to identify the cause of such alleged failures to provide backup. *See* Plaintiff's Dep. 119:8-121:10. Excerpts of Plaintiff's deposition transcript are attached to the Reply Declaration of Stephen A. Fuchs as Exhibit 1.

Chief Joseph Burton, Jr.

Sworn to and subscribed before me this
31st day of January 2008

Notary Public

NANCY O. CONKLIN
Notary Public, State of New York
No. 01CO6131780
Qualified in Westchester County
Term Expires August 15, 2009

Firmwide:84172899.2 052317.1002

4